# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1133

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Javier Barajas Ramirez, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 20, 2003

Filed: March 26, 2004

_____

Before BYE, JOHN R. GIBSON, and MELLOY, Circuit Judges.

_____

BYE, Circuit Judge.

Javier Barajas Ramirez appeals his conviction, challenging the district court's[1] denial of his motion for judgment of acquittal and motion for a new trial. We affirm the conviction.

_____

[1]The Honorable Donald E. O'Brien, United States District Judge for the Northern District of Iowa.

# I

Ramirez was charged with possession with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1). The jury returned a guilty verdict. The district court denied Ramirez's motion for a new trial and renewed motion for judgment of acquittal, and sentenced him to 120 months imprisonment.

The facts presented at trial are as follows. Iowa State Trooper Matt Anderson stopped Ramirez for speeding. When asked about his trip, Ramirez stated he was going to visit an uncle in West Paul (sic), Minnesota. He claimed although he did not have his uncle's address or telephone number, he intended to meet his uncle at a Days Inn. The trooper discovered Ramirez purchased the truck five days earlier for $8,000, and the truck was registered to a post office box address in Texas. Also, an application for Texas insurance indicated Ramirez was unemployed.

After Trooper Anderson issued a warning citation, he searched the truck following Ramirez's consent. Trooper Chris Callaway then arrived at the scene of the traffic stop, and both troopers resumed the search. Trooper Callaway immediately smelled fabric softener.[2] The troopers discovered a secret compartment, but could not discover a way into the compartment. After consenting to further search,[3] Ramirez drove the vehicle to a garage. Ultimately the troopers located 35 pounds of methamphetamine in the vehicle's hidden compartment. During a further search of the truck, the troopers found a rental receipt for the post office box used to register

---

[2]At trial, Trooper Callaway provided expert testimony as a drug interdiction officer, and stated drug traffickers often attempt to mask the odor of methamphetamine through use of fabric softener.

[3]Ramirez does not challenge the voluntariness of any of the searches.

the truck in Texas, a cell phone, a Days Inn laundry bag; $3,500 in Mexican currency, documents in Ramirez's name referencing other vehicles, and an address book.

Ramirez then accompanied the troopers and Special Agent Lori Lewis of the Iowa Division of Narcotics Enforcement to the Minneapolis area in an attempt to identify the person with whom Ramirez was supposed to have dropped off the drug-laden vehicle. The group drove to every Days Inn hotel in the Twin City region. All told, the controlled attempt to deliver the vehicle was unsuccessful.

Upon returning to Iowa, the troopers took Ramirez to jail. At this point, according to Trooper Anderson, Ramirez repeatedly stated he was in trouble, he was afraid "they" would kill his family, and he did not "need this f___ing s___t." Ramirez then stated somebody paid him $2,000 to drive the truck to Minneapolis, and he was to receive an additional $6,000 upon delivery. He explained the truck was registered to him to make it "look good." Ramirez stated the trouble he was in was not worth the $8,000. He also stated "there was this guy named 'Polo.'"

At trial, Special Agent Lori Lewis testified on behalf of the government as an expert regarding drug trafficking. She stated Minneapolis is a destination city for controlled substances, and explained the people who transport the drugs are often paid in cash for their participation, and drug couriers were sometimes unaware of the specifics of the items they transported. She emphasized that, in her experience, any drug courier must have known of the presence of the drugs. Further, Lewis testified four documents seized from Ramirez's truck were permits allowing four different vehicles, registered to Ramirez, to cross the border into Mexico from California, Arizona and Texas. The documents showed that, on each of four trips, Ramirez traveled from the United States into Mexico, and a few days or weeks later drove the same vehicle back into the United States.

At trial, Ramirez testified.  He testified that he bought vehicles in the United States and sold them in Mexico for a profit.  Regarding the circumstances surrounding his arrest, Ramirez testified he had been hired by a person named Polo to drive the vehicle from California to Texas, register the vehicle in Texas in his name, and then deliver it to Minneapolis for $3000 and expenses.  He testified he had met Polo at a park, but he did not know where Polo lived.  Ramirez further testified he was unaware of the drugs in the vehicle, and any inconsistent statements told to the officers were the result of his concern the vehicle might be stolen.  Ramirez also denied making incriminating statements at the jail.

On cross examination, Ramirez admitted his cash expenditures exceeded $1,000 during the trip, and that the officers seized $575 in cash from him.  He also admitted he lied to Trooper Anderson when he said he had met his uncle in Texas during the trip and had been to Minneapolis before.

II

When reviewing the sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict rendered and accept all reasonable inferences which tend to support the jury verdict.  United States v. Espino, 317 F.3d 788, 791 (8th Cir. 2003).  While the evidence need not preclude every outcome other than guilty, we consider whether it would be sufficient to convince a reasonable jury beyond a reasonable doubt.  United States v. Henderson-Durand, 985 F.2d 970, 975 (8th Cir. 1993).  This court will reverse for insufficient evidence only if no reasonable jury could have found Ramirez guilty beyond a reasonable doubt.  See United States v. Robbins, 21 F.3d 297, 298-99 (8th Cir. 1994).  This standard applies even when the conviction rests entirely on circumstantial evidence.  United States v. Davis, 103 F.3d 660, 667 (8th Cir. 1996).

To convict Ramirez under 21 U.S.C. § 841(a)(1), the government must establish Ramirez possessed the drug and did so with intent to distribute. See United States v. Sanders, 341 F.3d 809, 816 (8th Cir. 2003) (citing United States v. Oleson, 310 F.3d 1085, 1089 (8th Cir. 2002)). In this case, the government presented sufficient evidence for a reasonable jury to conclude Ramirez possessed the 35 pounds of methamphetamine with the intent to distribute. The circumstances surrounding the traffic stop and Ramirez's trip, including documents found inside the truck and his inconsistent and improbable explanations for his trip; his lies regarding his plans to meet his uncle; his incriminating statements; his implausible trial testimony regarding his registration of the truck and relationship with Polo; and expert testimony concerning the methods used by drug traffickers, when considered together, establish the government proved beyond a reasonable doubt Ramirez knowingly and intentionally transported the controlled substances in his truck for further distribution in Minnesota.

All factors considered, a reasonable jury could have concluded Ramirez's travels were not as benign as he suggested, and convicted him of possession with intent to distribute methamphetamine. See e.g. United States v. Ortega, 270 F.3d 540, 544-47 (8th Cir. 2001) (incriminating statements, improbable story for trip, and inconsistent stories all pointed toward knowledge of drugs hidden in car under windshield); United States v. Butler, 238 F.3d 1001, 1004 (8th Cir. 2001) (finding repeated lies to officer, combined with implausible story, sufficient to establish knowledge of drugs). Thus, viewing the totality of the strong circumstantial evidence in the light most favorable to the government, as it must on a judgment of acquittal, the district court properly concluded the evidence was sufficient to support the jury's verdict.

-5-

## III

This court will reverse a district court's denial of a motion for new trial if the district court abused its discretion. United States v. Campos, 306 F.3d 577, 579 (8th Cir. 2002); United States v. Espinosa, 300 F.3d 981, 983 (8th Cir. 2002). Pursuant to Federal Rule of Criminal Procedure 33, the district court may grant a motion for a new trial "if the interests of justice so require."

If, "despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, [the district court] may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir. 1980). In considering the motion for a new trial alleging the verdict is contrary to the weight of the evidence, the "court need not view the evidence in the light most favorable to the government, but may instead weigh the evidence and evaluate for itself the credibility of the witnesses." United States v. Lacey, 219 F.3d 779, 783-84 (8th Cir. 2000). "Motions for new trials based on the weight of the evidence are generally disfavored." Campos, 306 F.3d at 579. The district court's authority to grant a new trial should be exercised "sparingly and with caution." Lincoln, 630 F.2d at 1319.

Ramirez's arguments in favor of a new trial are substantially the same as those he advanced in support of the motion for judgment of acquittal. He contends the evidence at trial supported his testimony rather than the government's version of events. For the reasons set forth in the preceding discussion, we conclude a review of the factual circumstances in this case does not point to a gross miscarriage of justice. Thus, we affirm the district court's decision to deny a new trial.

IV

Accordingly, we affirm the judgment of conviction.

_____