# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2017

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Northern |
| | * | District of Iowa. |
| Jean M. Bertling, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 11, 2004
Filed: June 8, 2004

_____

Before MORRIS SHEPPARD ARNOLD, HANSEN, and RILEY, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Jean Bertling pleaded guilty in the district court[1] to two counts of manufacturing and aiding and abetting the manufacture of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 846, and 18 U.S.C. § 2. After the court sentenced her to two concurrent prison terms of 76 months, she appealed her sentence. We affirm.

---

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

## I.

Ms. Bertling first argues that the sentencing court should have granted her application to fund a domestic violence expert to testify at her sentencing hearing. "Counsel for a person who is financially unable to obtain ... expert ... services necessary for adequate representation may request them in an ex parte application." 18 U.S.C. § 3006A(e)(1). If the court finds, "after appropriate inquiry in an ex parte proceeding, that the [expert's] services are necessary" and the defendant is unable to pay, it "shall authorize counsel to obtain [the expert]." *Id.* The defendant has the burden of showing that the expert is necessary. *See United States v. Valverde*, 846 F.2d 513, 517 (8th Cir. 1988).

Here Ms. Bertling's counsel stated in the application for expert services that Ms. Bertling would offer evidence at sentencing that her boyfriend, co-defendant Bradley Levsen, abused her and that the threat of physical abuse caused her to participate in the crimes to which she pleaded guilty. Counsel sought funding to hire an expert witness to testify as to "the dynamics of an abusive relationship, why women in an abusive relationship commit crime for the abuser, and why it is so difficult for women to leave an abusive relationship." The application also stated that Ms. Bertling would offer the evidence to support her request for a downward departure from the applicable guideline range under U.S.S.G. § 5K2.12 (policy statement), which permits a departure "[i]f the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense." *Id.*; *cf. United States v. Johnson*, 956 F.2d 894 (9th Cir. 1992), *modified*, 969 F.2d 849 (9th Cir. 1992). A detailed résumé of the proposed expert was attached to the § 3006A(e)(1) application.

The sentencing court denied Ms. Bertling's application for funding for the expert without a hearing. In its order, the court found that the proposed witness was "obviously an expert on domestic violence" but was not a psychiatrist or a psychologist and had not examined Ms. Bertling. The court concluded that the

expert's "testimony on the general nature of domestic violence and abusive relationships is not necessary" because the court was "independently familiar with the subject matters from its experience on the bench."

We review a district court's decision to deny an application to fund an expert witness for an abuse of discretion, *see United States v. Ross*, 210 F.3d 916, 921 (8th Cir. 2000), *cert. denied*, 531 U.S. 969 (2000), and we will not reverse unless prejudice is shown, *see United States v. Bercier*, 848 F.2d 917, 919 (8th Cir. 1988).

For the first time on appeal, Ms. Bertling argues that she should have been granted a hearing before the application was denied. Although the district court must "make appropriate inquiry in an ex parte proceeding" before ruling on a § 3006A(e)(1) application, *see* 18 U.S.C. § 3006A(e)(1), we do not believe that this language necessarily requires a hearing in every case: what is required is a proceeding. In addition, here the district court's local rules require that litigants who want to have oral argument on their motions or applications include that request in the document, *see* N.D. Ia. L. Crim. R. 47.1(a); N.D. Ia. L. R. 7.1(c), and Ms. Bertling did not do so. In fact, Ms. Bertling never mentioned a desire for a hearing on this issue in the district court, and so we do not believe that the court erred in not holding one.

We also conclude that the sentencing court did not abuse its discretion in denying Ms. Bertling's application. Expert evidence is offered to assist the trier of fact, *see* Fed. R. Evid. 702, and here the sentencing judge (the fact-finder) stated that she did not need assistance because she was familiar with domestic violence based on her experience on the bench, where she has spent more than ten years, most of them in the state trial court, *see Almanac of the Federal Judiciary*, vol. 1 (8th Cir.) 22 (2004-1). Ms. Bertling relies on *United States v. Lewis*, 833 F.2d 1380, 1384-86 (9th Cir. 1987), which held that a trial judge erred in relying on his personal experience with anesthesia to decide that a defendant's statement given after

anesthesia was not voluntary. But our circumstances are far different; here the court relied on its general knowledge about a subject gained by experience on the bench to deny an application to appoint an expert to assist it in making a decision. Given that Ms. Bertling's application indicated that the expert would testify generally with respect to domestic abuse rather than as to this particular defendant, that the information was of a type that could well be familiar to an experienced trial judge, and that the experienced judge here stated that she was, in fact, familiar with the area, we conclude that the court did not abuse its discretion by denying the application. *Cf. United States v. Booker*, 186 F.3d 1004, 1006-07 (8th Cir. 1999).

At sentencing Ms. Bertling presented evidence regarding her abuse and the reasons for her criminal conduct, and the sentencing court denied her request for a downward departure. Although we cannot review the discretionary decision not to depart, *see United States v. Sypolt*, 346 F.3d 838, 841 (8th Cir.2003), *cert. denied*, 124 S. Ct. 1484 (2004), we note that the sentencing court based its decision on evidence that supported a finding that there were reasons other than domestic abuse for Ms. Bertling's drug activities.

II.

For her second point, Ms. Bertling argues that the sentencing court erred by failing to grant her a two-level reduction in her offense level for being a minor participant. *See* U.S.S.G. § 3B1.2(b). Under the sentencing guidelines, a "minor participant" is a defendant who "plays a part in committing the offense that makes [her] substantially less culpable than the average participant," U.S.S.G. § 3B1.2 comment. (n. 3 (A)), and "who is less culpable than most other participants, but whose role could not be described as minimal," U.S.S.G. § 3B1.2, comment. (n.5). Ms. Bertling had the burden of establishing that she was entitled to a minor-participant role reduction, and we review the sentencing court's denial of that reduction for clear error. *See United States v. Benford*, 360 F.3d 913, 915 (8th Cir. 2004).

At sentencing, Ms. Bertling testified as follows about her participation in the manufacturing of methamphetamine. Because she had a driver's license and Mr. Levsen did not, she drove him to places where he helped cook the drugs, and she drove when they went shopping together for pseudoephedrine pills and lithium batteries used at the cooks. She also allowed others involved in the operation to use her car and took Mr. Levsen and another participant to get anhydrous ammonia, a methamphetamine precursor chemical.

According to Ms. Bertling, in addition to shopping and providing transportation, she acted as a "lookout" during the cooks because she thought that Mr. Levsen was careless and she felt safer when she "watch[ed] for the Feds." She testified that although she knew what went into the process of making methamphetamine, she did not know how to "peel a battery ... get lithium strips ... [or] hit [an anhydrous ammonia] tank." But Ms. Bertling then acknowledged that sometimes during the cooks she would "peel paper off the battery," "pop pills" (presumably removing pseudoephedrine pills from blister packages), and crush pills. After the cooks, she was the one who cleaned up. She also allowed the home that she shared with Mr. Levsen to be used to manufacture the drug. When they were done with a cook, Mr. Levsen gave Ms. Bertling a user's amount of methamphetamine; "when he got high, he got [her] high." In addition, Ms. Bertling did not object to the findings in the presentence investigation report that she and Mr. Levsen shoplifted pseudoephedrine and sold methamphetamine.

Although it appears that Ms. Bertling was less culpable than Mr. Levsen, this alone is not enough to establish her entitlement to a role reduction. *See United States v. Camacho*, 348 F.3d 696, 701 (8th Cir. 2003). Based on the evidence of her admitted involvement in various phases of the manufacturing operation, we do not believe that the sentencing court was required to find that Ms. Bertling was "substantially less culpable than the average participant," U.S.S.G. § 3B1.2 comment.

(n. 3 (A)), and we conclude that the court did not clearly err in failing to find that she was a minor participant.

## III.

Accordingly, we affirm the judgment of the district court.

_____