# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2407

_____

United States of America,          *
                                     *

       Appellee,            *
                                     *   Appeal from the United States

  v.                       *   District Court for the Western
                                     *   District of Missouri.

Arturo Caballero, also known   *
as El Charro,                 *
                                     *

       Appellant.          *

_____

Submitted: June 20, 2005
Filed: August 25, 2005

_____

Before MURPHY, BYE, and SMITH Circuit Judges.

_____

SMITH, Circuit Judge.

Arturo Caballero was convicted by a jury of one count of conspiracy to distribute a mixture or substance containing a detectable amount of methamphetamine in an amount of 500 grams or more in violation of 21 U.S.C. §§ 841(a)(1)(A) and 846. The district court[1] adopted the recommendations in the Presentence Investigation Report (PSR) which calculated his total offense level at 42. Caballero was sentenced to 360 months' imprisonment. For reversal, Caballero argues that the district court

_____

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

erred in admitting evidence of the firearms discovered in his home and at his office. He also contends that the district court erred at sentencing. We affirm.

## I. *Background*

Caballero was indicted by a federal grand jury of one count of conspiracy to distribute a mixture or substance containing a detectable amount of methamphetamine in an amount of 500 grams or more in violation of 21 U.S.C. §§ 841(a)(1) and 846 (class A felony). Later, a federal grand jury returned a superseding indictment additionally charging Caballero with five counts of distribution of methamphetamine also in violation of 21 U.S.C. § 841(a)(1).

Agents of the government executed warrants at Caballero's home and T's Auto Sales (T's), Caballero's place of business. Special Agent J.J. Brandau seized a .32 caliber handgun from a purse at Caballero's residence and a .22 caliber Smith and Wesson rifle from an office at T's. At trial, Special Agent Brandau testified that he seized the firearms from Caballero's residence and business. Caballero objected but the district court admitted the evidence.

Caballero was an organizer and leader of a methamphetamine sales and distribution organization. At trial, several government witnesses provided proof of Caballero's narcotics sales and the quantities involved. Jane Land testified that she purchased methamphetamine from Daniel Salinas and Caballero. Land and Salinas initially went to T's to purchase methamphetamine but had no success. Later, the two met Caballero at a house on 14th Street in Kansas City, Kansas, where he sold them approximately two and one-half pounds of methamphetamine. Land positively identified Caballero from a photo array and identified him at trial. Salinas purchased approximately twenty pounds of methamphetamine from Caballero on four occasions. Salinas positively identified Caballero from a photo array and identified him at trial.

Joe Andrews testified that he purchased methamphetamine from Caballero in increments of no less than two pounds at a time. Andrews testified that he purchased approximately forty pounds of methamphetamine from Caballero. Andrews also positively identified Caballero in court. Grant Cushman testified that he purchased three ounces to several pounds of methamphetamine at a time from Caballero. He indicated that he also purchased methamphetamine from Gabrielle Valle (a/k/a Julian), who had a narcotics trafficking relationship with Caballero. In fact, Caballero took Cushman to purchase methamphetamine from Valle. Cushman positively identified Caballero in court. David F. Bunton, Jr., purchased methamphetamine from Tino Salazar. Bunton met with Caballero and discussed the sale of methamphetamine at T's. Caballero was upset with Salazar for stealing a customer and said he was going to steal Bunton's business from Salazar. Caballero offered to beat Salazar's methamphetamine price by $500 per pound. Bunton did not purchase methamphetamine from Caballero, but told Salazar about his conversation with Caballero.

The jury returned a guilty verdict on count one of the superseding indictment. The PSR attributed 31.75 kilograms of methamphetamine to Caballero and calculated his base offense level at 38 pursuant to U.S.S.G. § 2D1.1. The PSR also recommended enhancements for Caballero's role as a leader or organizer, pursuant to U.S.S.G. § 3B1.1(a), and for his possession of a firearm in connection with a drug conspiracy, pursuant to U.S.S.G. § 2D1.1(b)(1). Caballero objected to the base level in the PSR as not being founded upon reliable evidence. At sentencing, Caballero renewed his objection and also objected to the role and firearm enhancements.

## II. *Discussion*
### A. *Firearms Evidence*

We review a district court's admission of evidence for abuse of discretion. *United States v. Jordan*, 260 F.3d 930, 934 (8th Cir. 2001). The district court permitted testimony that two firearms were recovered from Caballero's residence and

place of business and permitted the firearms to be admitted as exhibits. Caballero objected on the grounds that: (1) the presence of the firearms was irrelevant to the charge against him, but instead bolstered the government's argument that Caballero was a dangerous drug dealer; and (2) even if relevant, its probative value was outweighed by its prejudicial impact. Caballero contends that the district court abused its discretion. We disagree.

Evidence of firearms possession is admissible and relevant as "tools in the drug trade" in circumstantially proving involvement in drug trafficking. *United States v. Dierling*, 131 F.3d 722, 732 (8th Cir. 1997). "The presence of firearms, generally considered a tool of the trade for drug dealers, is also evidence of intent to distribute." *United States v. Schubel*, 912 F.2d 952, 956 (8th Cir. 1990). During trial, Caballero cross-examined Special Agent Michael R. Oyler, asking him whether any weapons were seized. Caballero's questions "opened the door" to the firearms issue. The government subsequently "walked in" and introduced evidence of Caballero's weapons as "tools of the trade" over Caballero's objection, which the district court properly overruled. Significantly, the firearms were seized at the same time and place as was evidence demonstrating Caballero's participation in methamphetamine distribution. The introduction of the weapons was relevant under case law, *Dierling*, 131 F.3d at 732; *Schubel*, 912 F.2d at 956, and was not unfairly prejudicial. The district court did not abuse its discretion.

B. *Sentence Enhancement*

Caballero's second argument on appeal is that the district court improperly enhanced his sentence in violation of his Sixth Amendment right to trial by jury relying upon *Blakely v. Washington*, 542 U.S. 296 (2004). Specifically, he contends the drug quantity contained in the PSR and used by the district court for sentencing exceeds the 500 grams alleged in the charge and found by the jury. Caballero makes this argument for the first time on appeal and we therefore review for plain error. *United States v. Pirani*, 406 F.3d 543, 549 (8th Cir. 2005). However, we first review

-4-

the district court's application of the Sentencing Guidelines de novo, *United States v. Mashek*, 406 F.3d 1012, 1016 (8th Cir. 2005), and we find no error.

During sentencing, Ms. Barr, Caballero's attorney, stated "Judge, there is a minor correction. What we are challenging is any quantities beyond the 500 grams that were alleged in the charge and found by the verdict. We don't know which 500 grams, but they believe that at least that much." Caballero argues that there is a large discrepancy between the jury verdict and the PSR regarding the assessed amount of methamphetamine. Caballero contends that the jury verdict reflects a much smaller assessment than does the PSR, but that the district court adopted the recommendation in the PSR.

Our review of the record reveals that the evidence before the jury supported the quantity findings of the district court. The jury found Caballero guilty of conspiracy to distribute methamphetamine in an amount of 500 grams *or more*. To prove Caballero's drug quantity, the government was required to establish the amounts by a preponderance of the evidence. *United States v. Padilla-Pena*, 129 F.3d 457, 468 (8th Cir. 1997). The government established that Caballero was responsible for more than 500 grams of methamphetamine.

U.S.S.G. § 2D1.1 provided the applicable sentencing provision for Caballero's offense. Section 2D1.1 cross references § 1B1.3(a), which requires that "all reasonably foreseeable acts and omissions [of others] taken in furtherance of the conspiracy" must be considered when determining Caballero's drug quantity attribution. *United States v. Smith*, 240 F.3d 732, 737 (8th Cir. 2001).

Land, Salinas, Andrews, and Cushman all testified to large purchases of methamphetamine from Caballero. The PSR was more specific as to amounts sold, adding transactions with Carlos Bernal and Gabriel Valle. According to the PSR, methamphetamine transactions between Caballero, Land, and Salinas resulted in the

sale of 7.26 kilograms; transactions between Caballero and Bernal resulted in the sale of .91 kilograms; transactions between Caballero and Cushman' resulted in the sale of 2.72 kilograms; transactions between Caballero and Valle resulted in the sale of 2.72 kilograms; and transactions between Caballero and Andrews' resulted in the sale of 18.14 kilograms. The record supports the district court's attribution of 31.75 kilograms of methamphetamine to Caballero based upon the evidence before the jury. The district court therefore did not make factual findings in violation of Caballero's Sixth Amendment rights.

Lastly, Caballero argues that the district court erroneously adopted the PSR recommendation that characterized him as a leader or organizer. The district court sentenced Caballero as a leader or organizer of criminal activity involving five or more participants. U.S.S.G. § 3B1.1(a). Caballero made no Sixth Amendment argument below as to the role enhancement. We therefore review for plain error. To establish plain error, Caballero must show (1) error, (2) that is plain, and (3) that affects substantial rights. *Pirani*, 406 F.3d at 550. If all three conditions are met, then "an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*.

Caballero can show that there was error and that it was plain under *United States v. Booker*, 125 S. Ct. 738, 756–57 (2005) because the district court applied the Guidelines as mandatory. *Pirani* at 550. However, given the factual record of this case and the enhancements imposed, Caballero cannot show that the error affected his substantial rights by demonstrating that there is a reasonable probability that he would receive a more favorable sentence. *Pirani,* at 551. In our review of the record there is nothing that indicates a more favorable sentence is reasonably probable at resentencing. We therefore affirm the decision of the district court.

BYE, Circuit Judge, concurring in part, dissenting in part.

I concur the district court did not abuse its discretion by allowing the government to introduce the firearms into evidence. However, because the record indicates, at sentencing, the district court expressed its view of a mandatory application of the guidelines would result in a disproportionate sentence for the defendant, I believe a reasonable probability does exist Arturo Caballero would receive a more favorable sentence under an advisory guideline regime. See United States v. Rodriguez-Ceballos, 407 F.3d 937, 941 (8th Cir. 2005). I therefore would vacate and remand for resentencing.

_____