# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1026

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Northern |
| | * | District of Iowa |
| | * | |
| Bonnie S. Bailey, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted:  June 21, 2005
Filed: September 1, 2005

_____

Before MELLOY, HEANEY, and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

Bonnie Bailey was found guilty by a jury of attempt to manufacture methamphetamine, possession of pseudoephedrine with intent to manufacture methamphetamine, possession of methamphetamine with intent to distribute, and being a drug user in possession of a firearm. The district court[1] imposed concurrent

_____

[1] The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

sentences of 151 months in prison and five years of supervised release. Bailey appeals, challenging the sufficiency of the evidence and claiming that she was sentenced in violation of the Sixth Amendment and United States v. Booker, --- U.S. ---, 125 S. Ct. 738 (2005). We affirm.

I. Background

Bonnie Bailey is a forty-four-year-old farm laborer who worked for Lloyd Engler on his farm in Elkader, Iowa, from July 2001 until her detention. In July 2003, Leland Davis told police that he believed that there was a methamphetamine lab being run on the farm. Based on this information, the police executed a search warrant on Engler's farm.

During the July 16, 2003, search, Bailey and witness Luke Koehn were present. The police found burn sites and remnants of past cooks of methamphetamine, components used to manufacture methamphetamine, and some personal items belonging to Bailey. The components the police found that could be used in the manufacture of methamphetamine included: 8.1 grams of pseudoephedrine, lithium batteries, coffee filters with residue from the manufacture of methamphetamine, a plastic bag of salt, tin foil, a blender, a propane torch, a fitting commonly used on propane tanks to store anhydrous ammonia, and containers containing liquids consistent with the manufacture of methamphetamine. After testing these items, the Iowa Division of Criminal Investigation laboratory determined that at least four to five grams of pure methamphetamine could have been produced from the pseudoephedrine.

Officers found "burn sites" near Engler's residence and a camper that contained remnants of tin foil, coffee filters, pill packages, empty starter fluid cans, and mail addressed to Bailey. In and around a truck on the farm, officers found a propane tank that had a fitting with a blueish tinge. This type of tinge was consistent with contact

with anhydrous ammonia. Additionally, the officers found a hose that could be used with the propane tank.

Officers also seized some of Bailey's personal items, including mail addressed to her and her purse. In the purse, officers found a photo ID of Bonnie Bailey, crushed pseudoephedrine, and a container of lithium batteries.

On October 13, 2003, officers again searched Engler's farm. During the search, Bailey and Engler were present. Officers searched in and around a machine shed, the farm's milk parlor, and the residence. In the machine shed, police officers found what they believed to be an active methamphetamine "cook" in a Coleman cooler and components for making methamphetamine. These components included: tin foil, coffee filters, plastic bags, Coleman camping fuel, instruments to cut casings from lithium batteries, a small heater to dry methamphetamine manufacture by-products, a propane torch, a plastic container of liquids consistent with methamphetamine manufacturing, other containers appropriate for storing anhydrous ammonia, and Thermos brand containers of anhydrous ammonia. Officers also found a funnel that had Bailey's name written on it, a car once registered to Bailey, and an additional box heater of the same brand and model as the heater running at the active cook site. In separate locations on the farm, the officers found starting fluid cans punctured at the bottom.

In the milk parlor, police officers again found tin foil with burn marks indicating it was used for ingesting methamphetamine and a tube for ingesting methamphetamine. Officer's also searched Engler's person. They found three bags of methamphetamine, two bags with methamphetamine residue, lighters, a tube used for ingesting methamphetamine, and $275.00. The total weight of the methamphetamine mixture found on Engler was 3.76 grams.

In the residence, the police found mail addressed to Bailey. Officers found evidence of drug use, including tin foil with burn marks consistent with use of methamphetamine. In the dining room, they found Bailey's purse. Her purse contained $410, four lithium batteries, and 135 pseudoephedrine pills. In the kitchen, officers found nine bags of pre-measured methamphetamine in an eyeglass case and a large plastic bag labeled "Bonnie's Goodies Bags" which contained additional empty bags. The total weight of the methamphetamine was 7.86 grams.

In a bedroom of the residence, which officers testified Bailey admitted she occupied, officers found a bag of methamphetamine on a piano and empty bags under the bed. Also, in a bag containing Bailey's personal photos, officers found a .32 caliber handgun with the serial number scratched off.

On December 16, 2003, officers again conducted a search of the farm. Bailey was also present for this search. In the bedroom Bailey occupied, officers found a tin containing twenty-one grams of crushed pseudoephedrine near a small glass vial containing a small amount of methamphetamine. Officers also found remnants of a methamphetamine cook in the basement of the residence. The remnants included sixty-nine grams of a mixture containing waste product of methamphetamine manufacturing and a starting fluid can punctured on the bottom.

Following the third search, a grand jury issued an Indictment against Bailey. Counts 1 and 3 charged Bailey with the attempted manufacture of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846, and 18 U.S.C. § 2. Counts 2, 5, and 7 charged Bailey with possession of pseudoephedrine pills with intent to manufacture methamphetamine in violation of 21 U.S.C. § 841(c)(2). Count 4 charged Bailey with possession with intent to distribute approximately 9.24 grams of actual methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(B), and

18 U.S.C. § 2.  Count 6 charged Bailey with possession of a firearm by an unlawful drug user in violation of 18 U.S.C. § 922(g)(2).  Bailey pled not guilty.[2]

At trial, Darrell Simmons, Special Agent for the Iowa Division of Narcotics Enforcement testified to various statements allegedly made by Bailey at the time of the searches.  Simmons was present for all three searches of the farm.  He testified that Bailey admitted to having personal items in the camper and to having been in the camper during the two days previous to the July 16, 2003 search.

Simmons also testified to statements purportedly made by Bailey at the time of the October 13, 2003 search.  Simmons testified that Bailey admitted that she had stayed at Engler's residence.  He testified that Bailey said she had previously possessed the gun that was seized.  Bailey also allegedly stated that she stole pseudoephedrine and lithium batteries from a car that belonged to an acquaintance, Melinda Trappe, who was known to manufacture methamphetamine on the farm.

Again, Simmons testified to statements allegedly made by Bailey during the December 16, 2003, search.  Simmons testified that Bailey admitted to him that she occupied the bedroom where the methamphetamine and the firearm were found.

Leland Davis testified that he used methamphetamine on the farm with Bailey and Engler between five and ten times.  Davis also testified that he saw Bailey with Coleman camping fuel in glass jars.  Although Davis testified that he never witnessed anyone, other than himself, make methamphetamine at the farm, Deputy Mark Kautman from the Clayton County Sheriff's Office testified that Davis previously had claimed to have observed Lyle Voss and Jeff Freese making methamphetamine on

---

[2] The grand jury filed a Superseding Indictment, to correct a typographical error in Count 7, on April 23, 2004.  Bailey again pled not guilty.  On June 28, 2004, the grand jury filed a Second Superseding Indictment.  This Indictment added another charge against Bailey's co-defendant Engler, but did not name Bailey.

July 16, 2003. Finally, Davis testified about his interaction with Bailey. He stated that he knew Bailey lived at the farm and that he had purchased methamphetamine from her.

Luke Koehn testified to his involvement with Bailey and Engler. Koehn participated in the manufacture of methamphetamine at the farm as many as fifty times between late 2002 and 2003. He manufactured methamphetamine with Bailey at least twelve of those times. Koehn stated that Bailey was always at the farm. He noted that she sometimes stayed in the camper, and other times in the first floor bedroom of the residence. He testified that he stole anhydrous ammonia with Bailey. Further, he testified that Bailey was a drug user, that he had smoked methamphetamine off of tin foil with Bailey for about one year, that he bought methamphetamine from Bailey on a few occasions, and that Bailey had possessed the gun admitted into evidence at trial. In fact, he stated that Bailey had offered to sell the gun to him at one time.

Addie Bunting, Bailey's daughter, testified to Bailey's drug use. Bunting testified that she knew Bailey was a regular drug user and admitted to using drugs with Bailey and Engler on prior occasions. She stated that she knew Bailey and Engler sold methamphetamine. Bunting testified that she saw Engler, but never Bailey, manufacture methamphetamine.

A jury found Bailey guilty as to all counts. The district court sentenced Bailey to 151 months each for Counts 1, 2, 3, 4, 5, and 7, and 120 months for Count 6, all to run concurrently. The district court also sentenced Bailey to five years supervised release, consisting of three years each for Counts 1, 2, 3, 5, 6, and 7, and five years for Count 4, to run concurrently. Bailey now brings this timely appeal of her conviction and sentence.

II. Sufficiency of the Evidence

Bailey challenges the sufficiency of the evidence presented to support her conviction on all counts and seeks a new trial. We reverse the jury verdict based on the sufficiency of the evidence only if no reasonable jury could have found Bailey guilty beyond a reasonable doubt. United States v. Ramirez, 362 F.3d 521, 524 (8th Cir. 2004). Further, we reverse a "denial of a motion for a new trial if the district court abused its discretion." Id. at 525.

Upon a careful review of the record, we conclude that there was sufficient evidence to support Bailey's conviction on all counts. Bailey argues that there is insufficient evidence to prove that the lab equipment, pseudoephedrine pills, methamphetamine, or gun found in the three searches belonged to her. As detailed above, the evidence found during the three searches supports the jury's findings that the drugs and the components for making methamphetamine at the farm belonged to Bailey. Further, the testimony of Agent Simmons, Luke Koehn, and Bailey's daughter buttresses the evidence seized in the searches. "We enjoy no greater vantage point on appeal than did the jury at trial, and we have no right to usurp the jury's role to judge the facts and make credibility findings." United States v. Porter, 409 F.3d 910, 915 (8th Cir. 2005). Accordingly, a reasonable jury could have found Bailey guilty beyond a reasonable doubt. Ramirez, 362 F.3d at 524. The court's denial of the motion for a new trial was not an abuse of discretion as Bailey has not met the stringent standard necessary to grant a new trial.

III. Sentencing Issues

Bailey alleges that she was sentenced in violation of the Sixth Amendment because she was sentenced on the basis of a drug quantity not found by the jury or admitted by the defendant. Further, she argues that her sentence violated the Sixth Amendment because she was sentenced on the basis of the possession of a gun in

connection with another felony and enhancements not found by the jury or admitted by the defendant.

Bailey properly objected at sentencing to the court's use of facts not found by a jury, citing <u>Blakely v. Washington</u>, 542 U.S. 296 (2004). The district court overruled Bailey's objections. Because her objections were properly preserved for review on appeal "we construe [her claims] as a challenge to her sentence under the Supreme Court's decision in" <u>Booker</u>, --- U.S. ---, 125 S.Ct. at 755 (extending the reasoning of <u>Blakely</u> to the United States Sentencing Guidelines). <u>United States v. Brandt</u>, --- F.3d ---, 2005 WL 1993962, at *1 (8th Cir. Aug. 19, 2005).

The district court's use of these drug quantity findings and enhancements in a mandatory guidelines fashion constituted error. <u>See</u> <u>United States v. Pirani</u>, 406 F.3d 543, 550 (8th Cir. 2005) (en banc). As the Supreme Court stated in <u>Booker</u>, the federal Sentencing Guidelines are merely advisory. <u>Booker</u>, -- U.S. --, 125 S.Ct. at 757. Because Bailey preserved the error, the government bears the burden of showing that this error was harmless. <u>Id.</u>

In this case, the district court computed a sentence based upon an upward adjustment and a drug quantity calculation of 151 months for Counts 1, 2, 3, 4, 5, and 7, and a 120 month term for Count 6, to run concurrently. The district court imposed an alternate sentence, in case the Supreme Court found the Sentencing Guidelines to be unconstitutional, of 151 months for Counts 1, 2, 3, 4, 5, and 7, and 120 months for Count 6, to run concurrently. In imposing this sentence, the district court considered the factors set forth at 18 U.S.C. § 3553(a)(1)-(7). The district court imposed a second alternative sentence in case the Supreme Court prohibited the application of upward guideline adjustments from the base offense level other than those supported by facts stipulated to by the defendant. This sentence consisted of a 97 month term for all counts to run concurrently.

Because the district court imposed an alternative sentence that is the same as one within the "mandatory" guideline range, any Booker error that occurred "did not affect the ultimate sentence and was harmless beyond a reasonable doubt." United States v. Bassett, 406 F.3d 526, 527 (8th Cir. 2005).

## IV. Conclusion

For the foregoing reasons, we conclude that Bailey's conviction was sufficiently supported by the evidence and any sentencing error was harmless beyond a reasonable doubt. The judgment of the district court is affirmed.

_____