# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-4209

———————

United States of America,

        Appellee,

v.

Lloyd Louis Engler,

        Appellant.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Appeal From the United States
District Court for the
Northern District of Iowa.

———————

Submitted: June 21, 2005
Filed: September 2, 2005

———————

Before MELLOY, HEANEY, and GRUENDER, Circuit Judges.

———————

HEANEY, Circuit Judge.

Lloyd Louis Engler was convicted on two counts of attempt to manufacture and aid and abet the attempt to manufacture methamphetamine (mixture), one count of possession and aiding and abetting possession of five grams or more of actual (pure) methamphetamine with the intent to distribute, and one count of managing property for the purpose of manufacturing methamphetamine. The district court[1] sentenced Engler to 121 months imprisonment for each count, five years of supervised release, and a $2,000 fine, with sentences to run concurrently. Engler appeals, challenging

———————

[1] The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

the sufficiency of the evidence and claiming that he was sentenced in violation of Booker[2] and the Sixth Amendment. We affirm.

## BACKGROUND

On July 16, 2003, officers executed a search warrant on Engler's farm after receiving information that there was a methamphetamine lab on the premises. Burn sites, containing the remnants of past cooks, including punctured Coleman fuel cans, were found on the property. Officers seized 8.1 grams of pseudoephedrine, stripped lithium batteries, starter fluid, drain opener, and Mason jars containing Coleman fuel in a camper parked on the property. A propane tank with a blue-green tinted brass fitting, suggesting contact with anhydrous ammonia, was near the camper. The officers also found a purse containing the photo ID of Bonnie Bailey and mail addressed to Bailey in the camper.

On October 13, 2003, officers again conducted a search of Engler's farm. Officers found 3.76 grams of a methamphetamine mixture and a tube and lighter on Engler's person. In the kitchen of Engler's farmhouse, the officers found an eyeglasses case containing nine individual gem bags of methamphetamine mixture totaling 7.86 grams. In a kitchen drawer, the officers found a large bag labeled "Bonnie's gem bags," which contained more small plastic baggies. Similar packaging material was also found in the bedroom where Bailey was staying. A purse in the dining room contained pseudoephedrine pills, lithium batteries, and $410. In the garage furnace, officers found punctured cans of starting fluid. More items associated with the manufacture of methamphetamine, including tin foil, coffee filters, containers of acid, Coleman fuel, a propane torch, and thermoses of anhydrous ammonia were found in the machine shed. The remnants of a methamphetamine cook were found in a Coleman cooler in the shed.

---

[2]United States v. Booker, 125 S. Ct. 728 (2005).

Engler was charged with two counts of attempt to manufacture and aid and abet the attempt to manufacture methamphetamine (mixture), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846; possession and aiding and abetting possession of 5 grams or more of actual (pure) methamphetamine with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); and managing property for the purpose of manufacturing methamphetamine in violation of 21 U.S.C. § 856. Engler was tried jointly with Bonnie Bailey.[3]

At trial, Addie Bunting testified that she was addicted to methamphetamine, and used it daily in 2002. She testified that Engler prepared to cook methamphetamine several times in her presence. She saw Engler purchase pseudoephedrine pills and strip lithium batteries in preparation for cooking methamphetamine. Engler then went away to "cook" in the machine shed, the attic of the house, or another location on the farm. He later returned with methamphetamine to share. Bunting also testified that Engler and Bailey sometimes sold methamphetamine.

Leland Davis testified that he used methamphetamine with Engler and Bailey five to ten times on the farm and purchased methamphetamine from Bailey. Davis made arrangements to cook methamphetamine on the farm on two occasions, producing a total of 9.5 grams of methamphetamine. In exchange for allowing the cook to take place on the property, Davis gave Engler half of the methamphetamine from each cook. Engler made similar arrangements with others who cooked methamphetamine on the property. Davis testified that he saw evidence of other cooks on the farm, but did not witness these other cooks. A third witness, Luke Koehn, worked for Engler on the farm and used methamphetamine with Engler and Bailey on a daily basis. Koehn estimated that he cooked methamphetamine with

---

[3]Bailey's conviction and sentence form the basis for her appeal, see United States v. Bailey, No. 05-1026.

Bailey at the farm about fifty times during 2002 and 2003. He saw Bailey cook methamphetamine from beginning to end about twenty five times in various locations, including the machine shed. Koehn testified that Engler would receive 1 to 2 grams of the methamphetamine produced in return for allowing the cook on his property. Koehn also testified that he saw the remnants of other cooks on the property.

The jury convicted Engler on all charged counts. He was sentenced to 121 months of imprisonment, five years of supervised release, and fined $2,000. This appeal followed.

## ANALYSIS

### I. Sufficiency of Evidence

Engler challenges the sufficiency of the evidence presented to support his conviction on two counts: aiding and abetting the attempt to manufacture methamphetamine on or about July 16, 2003, and possession and aiding and abetting the possession of methamphetamine with intent to distribute on or about October 13, 2003. When reviewing the sufficiency of the evidence supporting a jury verdict, we view the evidence in the light most favorable to the government and ask whether a reasonable jury could have found the elements of the charged offense beyond a reasonable doubt. United States v. McDougal, 137 F.3d 547, 553 (8th Cir. 1998). After carefully reviewing the record, we find that there was sufficient evidence presented to support a conviction for aiding and abetting the manufacture of methamphetamine on July 16, 2003.

The testimony at trial showed that Engler received a portion of the methamphetamine produced in exchange for permitting methamphetamine cooks on his property. Engler also produced and sold methamphetamine himself. A reasonable jury could conclude that Engler knew his property was being used for

-4-

methamphetamine manufacture, benefitted from the manufacture, and assisted the production that took place on July 16, 2003 by making his property available for this production. See United States v. Bertling, 370 F.3d 818 (8th Cir. 2004) (finding sufficient evidence to deny minor participant status to defendant who assisted in cooks, and allowed her home to be used for manufacture of methamphetamine ).

Evidence was also sufficient to support the conviction for possession of methamphetamine with intent to distribute. During the October 13, 2003 search of the Engler farm, officers found 3.76 grams of methamphetamine on Engler. Methamphetamine packaged for distribution was found in the main residence on the kitchen counter in an eyeglasses case. Engler argues that this methamphetamine belonged to Bailey. The eyeglasses case, however, was on a kitchen counter in the residence Engler owned. Additional testimony that Bailey did not wear eyeglasses suggests that the case, and its contents, were in Engler's possession. The methamphetamine was individually packaged in small gem bags, allowing the jury to infer that it was intended for individual distribution. Witnesses also testified that Engler sold and shared methamphetamine with them. A jury could reasonably infer from these facts that Engler possessed the methamphetamine found and intended to distribute it.

## II. Sentencing Issues

Finally, Engler argues that he was sentenced in violation of the Sixth Amendment, because he was sentenced on the basis of a drug quantity not found by the jury or admitted by the defendant. At sentencing, the court found that Engler was responsible for quantities of methamphetamine and pseudoephedrine in excess of those found by the jury.[4] As a consequence, the court found that the appropriate

---

[4]The jury convicted Engler only of possession with intent to distribute five grams or more of actual methamphetamine, resulting in an offense level of 26. See

offense level was 30, and the corresponding guidelines range was 97 to 121 months, and imposed a guidelines sentence of 121 months. Engler properly objected at sentencing to the court's use of facts not found by a jury, citing Blakely v. Washington, 542 U.S. 296 (2004). See United States v. Pirani, 406 F.3d 543, 549 (8th Cir. 2005) (en banc). The court declined to find the guidelines unconstitutional, but indicated that a sentence based on the court's discretion, considering the factors listed in 18 U.S.C. § 3553(a), would also be 121 months.[5] The court's use of these drug quantity findings in a mandatory guidelines system was error. See Pirani, 406 F.3d at 550. The government therefore bears the burden of showing that this error was harmless. The government can meet this burden because the court stated that an alternate sentence based on the court's discretion would be identical to the sentence actually imposed. See United States v. Archuleta, 412 F.3d 1003, 1006 (8th Cir. 2005). Although Engler objects to the use of judge-found facts in this alternate sentence, this is not a Sixth Amendment violation in the context of an advisory guidelines system. Booker, 125 S. Ct. at 764-65.

While we agree that the government has met its burden of proving that the Booker error is harmless, we pause to note our concern with the district court's process of arriving at the alternate sentence. The court's alternate sentence was not accompanied by any discussion of the statutory factors or their relationship to the sentence imposed. Even after Booker, 18 U.S.C. § 3553(c) requires the district court to state its reasons for the imposition of a particular sentence. For years this court has emphasized the importance of this principle:

---

USSG § 2D1.1 (c)(7). The court based Engler's sentence on 0.93 grams of actual methamphetamine, 170.10 grams of methamphetamine mixture, and 39.20 grams of pseudoephedrine.

[5]The original transcript erroneously indicated that the alternate sentence was 120 months. This has been corrected, and we are satisfied that the district court's alternate sentence was 121 months.

> In the interest of judicial economy, we urge sentencing courts to refer to the facts of each case and explain why they chose a particular point in the sentencing range. In addition to informing the defendant and public why the sentencing court picked a particular sentence, the court's explanation 'provides information to criminal justice researchers' and 'assists the Sentencing Commission in its continuous reexamination of its guidelines and policy statements.' We believe tailored explanations by sentencing courts will preclude many appeals and pointless remands.

See, e.g., United States v. Dumorney, 949 F.2d 997, 998 (8th Cir. 1991) (citations and quotations omitted).

To a defendant, the sentencing proceeding is perhaps one of the most important and grave life moments. It is the time that a person is faced with the prospect of confinement for many years in a federal prison, often followed by an extended period of supervised release. Given the Supreme Court's clarification of what considerations should guide sentencing decisions, we consider it a very small burden upon the district court to explain its consideration of the § 3553(a) factors and their impact on the sentence imposed. It ought not be the job of this court, nor the defendant, to attempt to divine the motivation of the district court at sentencing in the penumbra of the record.

We are aware that the lack of reasons accompanying Engler's alternate sentence no doubt is a result of the considerable uncertainty at the time of sentencing regarding the effect of Blakely on the guidelines, and do not fault the district court in this case.

**CONCLUSION**

After reviewing the entirety of the record, we are satisfied that Engler's conviction was sufficiently supported by the evidence, and the Booker error in this case was harmless. Accordingly, we affirm Engler's conviction and sentence.

GRUENDER, Circuit Judge, concurring.

I concur in the judgment of the Court and all parts of the opinion except for that part of the opinion expressing concern that the district court's "alternate sentence was not accompanied by any discussion of the statutory factors or their relationship to the sentence imposed." Supra p. 6. In my opinion, the sentencing record as a whole reflects that the district court adequately complied with 18 U.S.C. § 3553(c).

The Court is certainly correct that "[e]ven after Booker, 18 U.S.C. § 3553(c) requires the district court to state its reasons for the imposition of a particular sentence." Supra p. 6. Also after Booker, "[t]he appropriate guidelines range . . . remains the critical starting point for the imposition of a sentence under § 3553(a)." United States v. Mashek, 406 F.3d 1012, 1016 n.4 (8th Cir. 2005). There is no question that the district court announced, in open court, how it arrived at Engler's guidelines range. See 18 U.S.C. § 3553(a)(4). Further, when the district court pronounced its initial guidelines sentence, it referred to the nature and circumstances of the offense and the history and characteristics of the defendant. See 18 U.S.C. § 3553(a)(1). In other places during Engler's sentencing, the concepts of drug addiction and treatment, § 3553(a)(2)(D), the seriousness of the offense, § 3553(a)(2)(A), and the kinds of sentences available, § 3553(a)(3), were discussed. I readily concede that the district court did not repeat these points when it pronounced the alternative discretionary sentence, but such an exercise would have been redundant. Indeed, Engler did not challenge on appeal the sufficiency of the district court's statement of reasons for the sentence imposed.

-8-

After <u>Booker</u>, it is especially critical that a sentencing court provide a statement of reasons for its sentence when the sentence involves a guidelines departure or when the court varies from the appropriate advisory sentencing guidelines range based on one or more of the factors in 18 U.S.C. § 3553(a). This approach reflects the fact that many of the § 3553(a) factors are accounted for by the sentencing guidelines, <u>see</u> 28 U.S.C. § 994 (setting forth considerations for the Sentencing Commission in establishing sentencing guidelines), as well as the fact that a "sentence imposed . . . consistent with the now-advisory guidelines . . . is generally indicative of reasonableness." <u>United States v. Shannon</u>, 414 F.3d 921, 924 (8th Cir. 2005). Of course, when a party makes a specific argument for a departure or variance, the district court should provide specific reasons for its ruling on that argument to facilitate appellate review.

––––––––––––––––––––––––––––