# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3920

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Scott E. Goodman, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  September 25, 2007
Filed:  December 7, 2007

_____

Before COLLOTON, BEAM and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Scott Goodman pled guilty to conspiracy to manufacture methamphetamine and possession of pseudoephedrine with intent to manufacture methamphetamine. The district court granted Goodman a four-level reduction for being a minimal participant under United States Sentencing Guidelines § 3B1.2(a) and a downward departure under § 5K2.0 (or alternatively a downward variance under 18 U.S.C. § 3553(a)) and sentenced him to 12 months and one day of imprisonment and three years of supervised release. The Government appeals this sentence. For the reasons below, we vacate the sentence and remand to the district court for resentencing.

# I.  BACKGROUND

On November 12, 2003, Omaha police received a disturbance and shoplifting call to a grocery store.  Officers encountered Goodman, whose then-girlfriend, Leslie Fisher, had been detained for shoplifting cold medicine containing pseudoephedrine, a key ingredient necessary to manufacture methamphetamine.  Goodman confirmed Fisher's story that she was being paid $100 to obtain cold medicine containing pseudoephedrine, although he refused to identify the individual paying her, and admitted to the police that this was the second time he had either purchased or shoplifted pseudoephedrine products.  Goodman consented to a search of his truck, located outside of the grocery store.  Within the truck, police found a gun and approximately two grams of methamphetamine, as well as glassware, several plastic containers, approximately 650 pseudoephedrine pills, aluminum foil, 500 coffee filters, and 22 lithium batteries, all of which are used in the manufacture of methamphetamine.  Police also discovered 2.4 grams of methamphetamine divided into three baggies, aluminum foil and a scale on Goodman's person.  The police arrested Goodman and Fisher.

On December 18, 2003, an indictment was filed charging Goodman and Fisher with conspiring to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846 and possessing a listed chemical, pseudoephedrine, with intent to manufacture methamphetamine in violation of 21 U.S.C. § 841(c)(2).  Goodman and Fisher pled guilty to the charges in the indictment.  On September 23, 2004, the district court sentenced Goodman to 12 months and one day of imprisonment and three years of supervised release.  The Government appealed the sentence, which was imposed after *Blakely v. Washington*, 542 U.S. 296 (2004), and before *United States v. Booker*, 543 U.S. 220 (2005).  This court remanded the case for resentencing so the district court could impose a sentence after properly determining the applicable advisory guidelines range.  *United States v. Goodman*, 170 Fed. Appx. 1002 (8th Cir.

2006) (per curiam). While the first appeal was pending, Goodman completed his term of imprisonment.

At Goodman's resentencing, the parties agreed to a base offense level of 26 and a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(b). Over the Government's objection, the district court granted Goodman a four-level mitigating role reduction as a minimal participant under U.S.S.G. § 3B1.2(a). Goodman thus had a total offense level of 19 with a criminal history category of I, resulting in an advisory sentencing guidelines range of 30 to 37 months' imprisonment. Noting Goodman's post-sentencing rehabilitation, including his negative drug tests, his continuous employment, his marriage to Fisher and support of her drug rehabilitation, and his payment of child support, the district court granted Goodman a downward departure for extraordinary rehabilitation under U.S.S.G. § 5K2.0. The district court then sentenced Goodman to time served under the initial sentence, stating that had it not granted a downward departure under U.S.S.G. § 5K2.0, it would have imposed the same sentence by granting a downward variance under 18 U.S.C. § 3553(a) for the same reasons.

The Government appeals the district court's sentence, claiming the district court erred in finding that Goodman qualified as a minimal participant under § 3B1.2(a) and in granting the downward departure or the alternative downward variance based on Goodman's extraordinary post-sentencing rehabilitation.

## II.    DISCUSSION

The Government first argues that the district court erred in granting Goodman a four-level reduction for being a minimal participant under U.S.S.G. § 3B1.2(a). A district court's decision to grant a mitigating role reduction is a question of fact that we review for clear error. *United States v. Carasa-Vargas*, 420 F.3d 733, 737 (8th Cir. 2005). We find a district court's decision to grant a role reduction to be clearly

erroneous when we are "left with the definite and firm conviction that a mistake has been committed." *United States v. Goebel*, 898 F.2d 675, 678 (8th Cir. 1990) (internal quotation omitted); *see also United States v. Ramos-Torres*, 187 F.3d 909, 915 (8th Cir. 1999).

The Sentencing Guidelines allow for a four-offense level minimal-participant reduction for those "who are plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2, cmt. n.4. The Sentencing Commission noted that the minimal participant reduction should be allowed "infrequently," and only for those who lack "knowledge or understanding of the scope and structure of the enterprise and of the activities of others." *Id*. Minimal participants are those with "insignificant" involvement in the criminal activity. *United States v. Boksan*, 293 F.3d 1056, 1058 (8th Cir. 2002). The Sentencing Commission provided examples of individuals who could qualify as minimal participants, such as those "who played no other role in a very large drug smuggling operation than to offload part of a single marihuana shipment, or in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs." U.S.S.G. § 3B1.2 cmt. n.2 (2000) (omitted in subsequent editions); *accord United States v. Yirkovsky*, 338 F.3d 936, 941 (8th Cir. 2003). The burden of establishing minimal-participant status rests with the criminal defendant. *See United States v. Bueno*, 443 F.3d 1017, 1022 (8th Cir. 2006). In determining whether a defendant qualifies as a minimal participant, a court should look at the defendant's relevant conduct. *Carasa-Vargas*, 420 F.3d at 737. A court must also compare the acts of the defendant to the acts of the other participants and the acts of the defendant as they relate to the elements of the offense. *United States v. Stanley*, 362 F.3d 509, 511 (8th Cir. 2004).

In finding that Goodman qualified as a minimal participant, the district court held that he was "plainly the least culpable of the three co-defendants" and that "his involvement was only to assist Leslie Fisher in obtaining pseudoephedrine." The district court concluded that because Fisher received a two-level reduction as a minor

participant and was more culpable than Goodman, Goodman should be entitled to a four-level minimal-participant reduction. Had Goodman's conduct been limited to driving Fisher to the store so that she could obtain the pseudoephedrine, his conduct might be comparable to that of a typical drug courier, with little knowledge or understanding of the full scope and structure of the criminal enterprise—in this case, essentially a conspiracy to manufacture methamphetamine. However, Goodman presented no evidence suggesting that he lacked knowledge or understanding of the scope of the conspiracy to manufacture methamphetamine. Moreover, the evidence of Goodman's relevant conduct shows that he was much more involved in the conspiracy to manufacture methamphetamine than merely driving Fisher to the store to obtain pseudoephedrine. *Cf. United States v. Snoddy*, 139 F.3d 1224, 1225 (8th Cir. 1998).

As part of his guilty plea, Goodman admitted that he was obtaining pseudoephedrine knowing that it would be used in the manufacture of methamphetamine and that he was conspiring with others to manufacture methamphetamine. At Goodman's resentencing, the Government presented the testimony of Officer Eric White, one of the arresting officers. Officer White testified about the items seized from Goodman's truck, the items seized from Goodman and Goodman's statements. Goodman told officers that he knew Fisher had been offered $100 to obtain ten to fifteen boxes of pseudoephedrine products and that this was only his second time purchasing or shoplifting pseudoephedrine products. However, the evidence clearly shows that Goodman's involvement in the methamphetamine conspiracy extended far beyond simply assisting Fisher in obtaining pseudoephedrine for some unidentified third party on one or two occasions.

To the contrary, the evidence compels a finding that Goodman was deeply involved in the manufacture, and perhaps even distribution, of methamphetamine. Police officers seized 22 lithium batteries, 500 filters, aluminum foil, glass and plastic containers, a scale, a gun and three separate baggies of methamphetamine from *his*

truck and *his* person. No evidence has been presented to suggest those items belonged to Fisher. The items seized from Goodman's truck and from his person are all associated with the manufacture or distribution of methamphetamine. *See, e.g.*, *United States v. Hall*, 497 F.3d 846, 849 n.3 (8th Cir. 2007) (finding that, among other items, glass and plastic containers, lithium batteries and coffee filters were associated with the manufacture of methamphetamine); *United States v. Rodriguez*, 484 F.3d 1006, 1009 (8th Cir.), *cert. denied*, --- U.S. ---, 128 S. Ct. 316 (2007) (finding that, among other items, a scale is an item "associated with distribution of controlled substances"); *United States v. Goff*, 449 F.3d 884, 886 (8th Cir. 2006), *cert. denied*, --- U.S. ---, 127 S. Ct. 2095 (2007) (stating that aluminum foil is a common element in the manufacture of methamphetamine); *United States v. Engler*, 422 F.3d 692, 696 (8th Cir. 2005) (upholding a jury's finding that small, individually-wrapped packages of actual methamphetamine was intended for distribution); *United States v. Caballero*, 420 F.3d 819, 821 (8th Cir. 2005) (stating that "[t]he presence of firearms, generally considered a tool of the trade for drug dealers, is also evidence of intent to distribute").

The district court failed to account for all of the relevant conduct evidence when it found that Goodman's only involvement was to assist Fisher in obtaining pseudoephedrine. The evidence shows that Goodman was not merely assisting Fisher in obtaining pseudoephedrine but was also fully involved in the manufacture of methamphetamine. Furthermore, in determining whether a defendant qualifies as a minimal participant, a court may consider whether certain elements of the defendant's conduct "exceeded the minimum necessary to be found guilty of the offenses." *Yirkovsky*, 338 F.3d at 942. Here, the evidence shows that Goodman not only aided Fisher in obtaining pseudoephedrine, he also possessed the materials required to manufacture methamphetamine, possessed actual methamphetamine, and had items typically associated with the distribution of methamphetamine, such as a scale, small, individually wrapped baggies of actual methamphetamine and a gun. *See, e.g.*, *Rodriguez*, 484 F.3d at 1009; *Engler*, 422 F.3d at 696; *Caballero*, 420 F.3d at 821.

After reviewing the record, we are left with the firm conviction that the district court erred in finding that Goodman's only involvement was to assist Fisher in obtaining methamphetamine, and we hold that the district court committed clear error in granting Goodman a four-level reduction based on his role as a minimal participant under U.S.S.G. § 3B1.2(a). The evidence shows that Goodman's conduct fully met the elements of the offenses, that his relevant conduct even exceeded the elements of the offenses, and that he was at least as culpable as Fisher. At a minimum, Goodman clearly was not plainly the least culpable of the those involved in the offenses.

The Government next argues that the district court erred in granting either a downward departure or, alternatively, a downward variance from the calculated advisory guidelines range of 30 to 37 months' imprisonment to 12 months and one day of imprisonment based on Goodman's extraordinary post-sentencing rehabilitation. In resentencing a defendant, the law of this circuit dictates that a district court cannot consider post-sentencing rehabilitation either for a departure, *United States v. Jenners*, 473 F.3d 894, 899 (8th Cir. 2007), or a downward variance, *United States v. Pepper*, 486 F.3d 408, 413 (8th Cir. 2007). Thus, in resentencing Goodman, the court could have validly considered any evidence it could have heard at the original sentencing but should not have considered any evidence of Goodman's post-sentencing rehabilitation. *See Jenners*, 473 F.3d at 899.

## III.   CONCLUSION

Therefore, because the district court committed clear error in granting Goodman a mitigating role reduction as a minimal participant and thus miscalculated the advisory sentencing guidelines range, and because the district court improperly considered Goodman's post-sentencing rehabilitation in imposing its sentence, we vacate the sentence and remand for resentencing.

_____