# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1904
_____

United States of America

*Plaintiff - Appellee*

v.

Buck Otto White, also known as Timothy Joseph Hoffman

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota - St. Paul
_____

Submitted: October 19, 2015
Filed: March 8, 2016
_____

Before WOLLMAN, BEAM, and GRUENDER, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Buck Otto White was indicted for possessing stolen firearms and ammunition, in violation of 18 U.S.C. § 922(j), and for being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1). At trial, the district court[1]

_____

[1]The Honorable Joan N. Ericksen, United States District Court for the District of Minnesota.

overruled his objections to the admission of evidence of other stolen items found in his storage unit and car. The court also denied White's motion for judgment of acquittal. The jury convicted White on all counts, and the court sentenced him to 300 months' imprisonment. White now appeals. We affirm.

I.

In the course of investigating a series of burglaries of local businesses and storage units, the New Ulm Police Department and the Nicollet County Sheriff's Office sought and received a warrant to place a global-positioning-system ("GPS") tracking device on White's minivan. An officer attached the device to White's van while responding to an emergency medical call at White's home in early February 2013. With the GPS device in place, law enforcement began tracking the van's location.

On February 11, White's van stopped at a storage-unit facility in St. Peter. The next day, the van returned to the same storage facility and later a second storage facility in St. Peter. Police determined that White did not lease any storage units in St. Peter. After leaving the St. Peter storage units, White's van traveled to a third storage facility, B&G Storage, in Courtland, where White did lease a unit.

The following day, White's van again traveled to St. Peter. Mark Chadderon, an investigator from the Nicollet County Sheriff's Office, followed White to a St. Peter storage-unit facility. Investigator Chadderon saw White walking near the storage units, and he noticed that White parked his van so that it blocked access to the storage facility. After White drove away, Investigator Chadderdon discovered that one of the storage units had been opened forcibly. Investigator Chadderdon ran the license-plate number on a car stored inside the unit and identified Robert Ploog as the unit's renter. Investigator Chadderdon then checked the GPS monitor and saw that White's van traveled, without stopping, to B&G Storage.

As a result of these events, Investigator Chadderdon sought, received, and executed a search warrant for White's unit at B&G Storage. Inside the unit, Investigator Chadderon found a new lawnmower that was still in its box, with an attached receipt showing that it belonged to Ploog. Investigator Chadderon also found framed art prints that had been stolen from another unit in St. Peter. In addition, he found a stolen rotary hammer, Ford automobile parts stolen from a Ford dealership, and a snow blower with an obliterated serial number. Finally, Investigator Chadderdon found multiple cased firearms, shells, and equipment on shelves in the back of the unit. These firearms included a Mossberg 12-gauge shotgun, an SKS rifle with a scope and collapsible bayonet, a .22 rifle, and a Remington SP-10 shotgun. Investigator Chadderon also found over one hundred 10- and 12-gauge shotgun shells, a camouflage bag, a shooting rest used to steady a gun, and a shooting vest.

Law enforcement learned that the SP-10 shotgun was registered to Kenneth Nevins. Investigator Chadderdon contacted Nevins about the firearm, and Nevins explained that he had been out of the state for several months. Investigator Chadderdon and several deputies went to Nevins's home and discovered that someone had broken open the front door. Consultation with Nevins led them to conclude that several items were missing from Nevins's home, including a flat-screen TV, fifteen firearms, ammunition, camouflage shooting bags, gun cases, and several tackle boxes. Nevins had made distinctive markings on the stolen property, painting names or letters on the cases and attaching ropes to the zippers of the camouflage bags. These markings matched the markings on the items found in White's storage unit.

After two days of searching for White, law enforcement located him. White fled to avoid being apprehended. However, officers eventually caught him and impounded his car, a Buick LeSabre. Police searched the car and found bolt cutters, a camouflage bag, a DeWalt Sawsall electric saw with an obliterated serial number, and an outdoor surveillance camera that had been reported stolen from a local auto

dealer. During a later search of White's home, law enforcement found three tackle boxes and over 200 rounds of ammunition. Two of the tackle boxes were located in White's music room among White's personal belongings, and another was found sitting on top of a laundry basket at the landing of the stairs. Law enforcement also found ammunition in the laundry room of White's home. These items matched the items taken from Nevins's home.

Based on this evidence, a grand jury indicted White for being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1), and for possessing stolen firearms and ammunition, in violation of 18 U.S.C. § 922(j). The Government provided extensive evidence at trial, including testimony from Investigator Chadderon, Kenneth Nevins, Robert Ploog, and Geoffrey Elvee, the owner of another burglarized unit in St. Peter. White also testified, claiming that he was innocent because he did not place the firearms or ammunition in his storage unit or home, nor did he know that someone else had placed them there. White acknowledged that the firearms found in his storage unit came from Nevins's home, but he testified that he did not burglarize the home and that others had access to his unit at B&G Storage. White admitted that he paid rent on the storage unit, that he stored property there, and that he had been to the unit the day before the search uncovered the firearms and ammunition. He also acknowledged that ammunition had been found in his home.

The Government introduced evidence of the stolen items in White's storage unit and car, including the stolen lawnmower, the art prints, and the surveillance camera. White objected to the admission of this evidence, contending that its admission violated Federal Rule of Evidence 404(b). The district court overruled White's objections. At the conclusion of the trial, the jury returned a guilty verdict on all counts.

-4-

White's presentence investigation report indicated that he had thirty prior felony convictions. The report also recommended a four-level enhancement under USSG § 2K2.1(b)(6)(B) because White possessed the firearms and ammunition in connection with another felony offense. White objected, arguing that the Government had not shown that he committed the relevant felony offense, the burglary of Nevins's home. The district court applied the enhancement over White's objection and determined that White's base offense level was 36 and that his criminal history category was VI. As a result, White's advisory sentencing guidelines range was 324 to 405 months. White argued that this range was too severe in light of his allegedly nonviolent record, his family circumstances, his drug addiction, and his age. The district court varied downward and imposed a sentence of 300 months.

II.

White raises several issues on appeal. First, he argues that the court improperly overruled his objections to the admission of the other-crimes evidence at trial. Second, he contends that the court erred by denying his motion for judgment of acquittal. Finally, White argues that the court erred by applying the four-level enhancement under USSG § 2K2.1(b)(6)(B) and by imposing a substantively unreasonable sentence.

A.

White first argues that the district court erred by overruling his objection to the admission of other-crimes evidence at trial. This evidence included the stolen lawnmower and art prints found in White's storage unit and the stolen surveillance camera found in White's car. We review the district court's evidentiary rulings for abuse of discretion. *United States v. Phelps*, 168 F.3d 1048, 1054 (8th Cir. 1999).

The district court admitted the contested evidence over White's objection after concluding that the evidence was intrinsic to the crime charged and thus not subject to Rule 404(b). See *United States v. Brooks*, 715 F.3d 1069, 1076 (8th Cir. 2013). As White's counsel explained at oral argument, the court alternatively found that the evidence did not violate Rule 404(b). We affirm the court's decision denying White's objection because even if some of the evidence was extrinsic, its admission did not violate Rule 404(b).

Rule 404(b) prohibits the admission of evidence of other crimes, wrongs, or acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). This same evidence, however, "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* This evidence is admissible if it satisfies four criteria. *United States v. Brumfield*, 686 F.3d 960, 963 (8th Cir. 2012). First, "[i]t must be probative of a material issue other than character." *Id.* Second, "[t]he prior act must be similar in kind and reasonably close in time to the crime charged." *Id.* Third, "[t]he prosecution must present sufficient evidence from which a jury could find by a preponderance of the evidence that the prior act occurred." *Id.* Finally, "under Rule 403, the probative value of the evidence cannot be substantially outweighed by the danger of unfair prejudice." *Id.*

Here, the evidence showing that White possessed the other stolen items in his storage unit and car meets the standard for admission under Rule 404(b). First, the evidence was probative of a material issue other than character because it tended to prove White's intent, lack of mistake or accident, and knowledge. The pattern of thefts tended to prove White's intent to commit the charged offenses. *See United States v. Hermes*, 847 F.2d 493, 497 (8th Cir. 1988) (holding admission to prior arson scheme relevant to show intent to commit the charged arson). Such evidence also showed that his possession of stolen property—the firearms and ammunition—was

no mistake or accident. *See Westfield Ins. Co. v. Harris*, 134 F.3d 608, 614-15 (4th Cir. 1998) ("[W]here prior acts of apparent coincidence are similar, the repeated reoccurrence of such an act takes on increasing relevance to support the proposition that there is an absence of accident."). Finally, evidence showing that White knowingly possessed other stolen items was probative on the question whether White knew or had reasonable cause to believe that the firearms and ammunition had been stolen. *United States v. Loving*, 254 F.3d 71, 2001 WL 502803, at *5 (5th Cir. 2001) (unpublished) ("Because evidence that [the defendant] knowingly possessed stolen property on another occasion might help to demonstrate that he was aware—contrary to his position at trial that his wife had purchased the firearms—that he was in possession of stolen firearms, this evidence is relevant to something other than character.").

Second, the evidence was similar in kind and not overly remote in time. The evidence was similar in kind because all of the items were stolen and stored in White's storage unit and car. *See United States v. Calkins*, 906 F.2d 1240, 1246 (8th Cir. 1990) (upholding the admission of a stolen driver's license and credit cards when a defendant was on trial for possessing stolen silverware, oriental rugs, crystal, and several pieces of furniture); *United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir. 2006) (noting that an admissible act under Rule 404(b) need not duplicate the charged conduct but must be similar enough to support an inference of criminal intent). In addition, the evidence suggests that all of the items had been stolen shortly before law enforcement apprehended White. For example, Nevins testified that items were stolen from his unit after he left the state in late 2012. Robert Ploog also testified that the lawnmower and other items were stolen from his unit sometime in early February 2013, just days before Investigator Chadderon conducted the search of White's storage unit. The acts, therefore, were not overly remote in time from the crimes at issue to be admitted under Rule 404(b). *See United States v. Gant*, 721 F.3d 505, 510 (8th Cir. 2013) (citing *United States v. Yielding*, 657 F.3d 688, 702 (8th Cir. 2011), to show that the court has upheld the introduction of fifteen-year-old convictions).

Third, the Government presented sufficient evidence from which a jury could find by a preponderance of the evidence that the prior acts occurred. Investigator Chadderon testified to the events he observed and the information he gathered as a result of his investigation—notably, that the items had been stolen and that they were found in White's possession. This evidence was uncontradicted at trial. The same can be said of the testimony from Ploog, Nevins, and Elvee. Accordingly, the testimony satisfied the sufficient-evidence standard under Rule 404(b). *See United States v. Drew*, 894 F.2d 965, 971 (8th Cir. 1990) (finding testimony sufficient to support the jury's conclusion that the prior acts occurred).

Finally, in accordance with our general rule, we afford great deference to the determination of the district court—the court that saw and heard the evidence—that any potential prejudice resulting from admission did not substantially outweigh the probative value of the evidence. *See United States v. Tyerman*, 701 F.3d 552, 563 (8th Cir. 2012). The judge instructed the jury that White was on trial only for the crimes charged. And, as discussed above, this evidence tended to establish intent, lack of mistake or accident, and knowledge. We thus will not disturb the court's determination here. *See United States v. Anwar*, 428 F.3d 1102, 1110 (8th Cir. 2005) ("Giving great deference to the district court's determination in balancing the prejudicial effect and probative value of evidence of other crimes or acts, we will reverse the district court's evidentiary decision only when the evidence admitted clearly has no bearing on any issue involved." (quoting *United States v. Claybourne*, 415 F.3d 790, 797 (8th Cir. 2005))). Therefore, we conclude that the evidence satisfied the four requirements of Rule 404(b).

White nevertheless contends that admission ran afoul of the Federal Rules of Evidence because the Government did not provide formal Rule 404(b) notice two weeks prior to trial. We disagree. Rule 404(b)'s notice standard is flexible because "[w]hat constitutes a reasonable . . . disclosure will depend largely on the circumstances of each case." *United States v. Green*, 275 F.3d 694, 701 (8th Cir.

2001). The notice rule is intended to "reduce surprise and promote early resolution on the issue of admissibility." *United States v. Robinson*, 110 F.3d 1320, 1326 (8th Cir. 1997). It prevents the Government from "[lying] in wait and spr[inging] the 'other acts' evidence" on an unsuspecting defendant. *United States v. Vega*, 188 F.3d 1150, 1155 (9th Cir. 1999). Whether notice was reasonable is informed in part by a defendant's proof that he suffered prejudice as a result. *Id.*

Here, we find no notice problem sufficient to warrant reversal. One week prior to trial, the Government gave notice in its trial brief that it intended to introduce evidence of the other stolen items found in White's storage unit and car. The Government characterized this evidence as intrinsic to the charged offense. White did not request a continuance upon learning this information. He had the opportunity to—and did—respond prior to trial, and, as a result of the Government's notice, he was able to object to the introduction of such evidence during the trial proceedings. *See United States v. French*, 974 F.2d 687, 695 (6th Cir. 1992) (holding that disclosure one week before trial provided "ample opportunity . . . to prepare for the consequences of this damaging evidence"). At no point did White object specifically based on insufficient notice. *Cf. United States v. White*, 405 F.3d 208, 213 n.3 (4th Cir. 2005) (concluding that a defendant did not preserve the issue of insufficient notice when he failed to object specifically for this reason). And in this appeal to this court, he has not demonstrated that he suffered prejudice sufficient to warrant reversal of the jury's verdict as a result of learning about the evidence one week before trial. *See Green*, 275 F.3d at 701 (explaining that prejudice is relevant to the reasonableness determination for notice under Rule 404(b)); *accord United States v. Watson*, 409 F.3d 458, 465 (D.C. Cir. 2005) (upholding admission of Rule 404(b) evidence despite late notice in part because the defendant failed to demonstrate prejudice as a result of the error). Accordingly, we conclude that notice was reasonable under the circumstances of this case. We thus reject White's contention that the district court abused its discretion by admitting the other-crimes evidence.

-9-

B.

White next argues that the evidence was insufficient to support the jury's verdict and that the court should have entered a judgment of acquittal. "When reviewing the sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict rendered and accept all reasonable inferences which tend to support the jury verdict." *United States v. Ramirez*, 362 F.3d 521, 524 (8th Cir. 2004). Although "the evidence need not preclude every outcome other than guilty, we consider whether it would be sufficient to convince a reasonable jury beyond a reasonable doubt." *Id.* We "will reverse for insufficient evidence only if no reasonable jury could have found [White] guilty beyond a reasonable doubt." *See id.*

To convict White on the two counts of being a felon in possession of a firearm or ammunition under 18 U.S.C. § 922(g), the Government had to prove: (1) that White had a previous conviction for a crime punishable by imprisonment exceeding one year, (2) that he knowingly possessed the firearms and ammunition, and (3) that the firearms and ammunition traveled in or affected interstate commerce. *See United States v. Garcia-Hernandez*, 803 F.3d 994, 996 (8th Cir. 2015). To convict White on the two counts of knowing possession of stolen firearms or ammunition under § 922(j), the Government had to prove: (1) that White knowingly possessed the firearms and ammunition, (2) that the firearms and ammunition were stolen, (3) that White knew or had reasonable cause to believe the firearms and ammunition were stolen, and (4) that the firearms and ammunition were shipped or transported in interstate commerce. *See United States v. Provost*, 237 F.3d 934, 938 (8th Cir. 2001). At trial, both parties stipulated to White's status as a felon and to the fact that the firearms and ammunition had traveled in or affected interstate commerce. In his appeal, White does not contest that the Government proved that Nevins owned the firearms and ammunition and that these items had been stolen. Instead, he contests the sufficiency of the Government's proof only on the remaining elements: (1) whether White knowingly possessed the firearms and ammunition, *see* 18 U.S.C.

§ 922(g), (j), and (2) whether White knew or had reasonable cause to believe that the firearms and ammunition were stolen, *see* 18 U.S.C. § 922(j).

We begin with the element common to both offenses: White's knowing possession of the firearms and ammunition. In general, "[t]he government can prove knowing possession by showing actual or constructive possession, and possession can be sole or joint." *United States v. Battle*, 774 F.3d 504, 511 (8th Cir. 2014), *cert. denied*, 575 U.S. ---, 135 S. Ct. 1881 (2015). "Constructive possession 'is established if the person has dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself.'" *Id.* (quoting *United States v. Boykin*, 986 F.2d 270, 274 (8th Cir. 1993)). Mere proximity, without more, is insufficient; constructive possession requires knowledge of the presence of a firearm or ammunition. *Id.* However, because "a jury rarely has direct evidence of a defendant's knowledge of a firearm's presence . . . knowledge is generally established through circumstantial evidence." *Id.* (alteration in original) (quoting *United States v. Mann*, 701 F.3d 274, 304-05 (8th Cir. 2012)).

We conclude that the Government presented ample evidence from which the jury could conclude that White knowingly possessed the firearms and ammunition. First, the evidence showed that the firearms and ammunition were located in areas over which White exercised control—his home and storage unit. Regarding the storage unit, the Government elicited testimony from the storage facility's owner that White was the lessee, that White typically paid the rent, and that the owner had seen White access the unit. The facility's owner also stated that White had the key to the unit. *See United States v. Thomas*, 593 F.3d 752 (8th Cir. 2010) (noting that "the holder of the key, be it to a dwelling, vehicle, or motel room in question, has constructive possession of the contents therein" (quoting *United States v. Timlick*, 481 F.3d 1080, 1083 (8th Cir. 2007))). Investigator Chadderon testified that the storage-unit key was found on White's minivan key ring.

Despite this evidence, White argues that the Government failed to prove constructive possession because White informed the jury that others also had a key. Although White was free to present his alternative theory, the jury was not required to accept it. *See United States v. Smith*, 508 F.3d 861, 867 (8th Cir. 2007). Moreover, even if the jury believed that others had access to the storage unit, circumstantial evidence nevertheless suggested that White had knowledge of his unit's contents. Investigator Chadderon testified that White went to his B&G Storage unit the day before investigators found the firearms and ammunition. Viewing the evidence in the light most favorable to the verdict, we conclude that a reasonable jury could have found that White had control over his storage unit and knowledge of its contents. Therefore, the evidence was sufficient to establish that he knowingly possessed the firearms and ammunition.

A reasonable jury similarly could conclude that White knowingly possessed the ammunition that investigators found in his home. Law enforcement found over 200 rounds of ammunition in White's laundry room. "In the absence of evidence refuting the normal inference of dominion, showing that a firearm [or ammunition] was discovered at the defendant's residence suffices to prove constructive possession." *United States v. Cornelison*, 717 F.3d 623, 627 (8th Cir. 2013) (quoting *United States v. Mabry*, 3 F.3d 244, 247 (8th Cir. 1993)). The evidence did not refute the normal inference of dominion here. White nevertheless maintains that the evidence was insufficient to connect him to the ammunition because a police report from an unrelated search of his home in early February made no mention of finding ammunition. But two critical flaws render this argument meaningless. First, the search report's failure to mention ammunition does not necessarily demonstrate that ammunition was absent from the home. The officers who conducted the search were performing a state investigation, and Minnesota law, at the time of the search, did not prohibit a felon from possessing ammunition. Minn. Stat. Ann. § 624.713 (2013). In addition, even if no ammunition was present in the home in early February, White did not enter police custody until over a week following this first search. White

therefore could have brought the ammunition into his home in the intervening period.[2] Once again, viewing the evidence in the light most favorable to the verdict, we conclude that a reasonable jury could find that White had dominion over his home and therefore that he knowingly possessed the ammunition. We thus conclude that the Government offered sufficient evidence that White knowingly possessed the firearms and ammunition.

Next, we consider whether the Government presented evidence from which a reasonable jury could conclude that White knew or had reasonable cause to believe that the firearms and ammunition were stolen. *See* 18 U.S.C. § 922(j). To satisfy this knowledge element, the Government did not need to prove that White actually knew the items were stolen but only that "it would have been reasonable for him . . . to believe" that they were. *See United States v. Iron Eyes*, 367 F.3d 781, 784 (8th Cir. 2004).

Nevins testified at trial that he was the rightful owner of the firearms and ammunition and that someone had stolen these and other items from his home. In his appeal, White does not contest the sufficiency of the evidence proving these facts. Instead, he argues that the evidence was insufficient to negate the possibility that someone else committed the burglary and, unbeknownst to White, placed the stolen items in White's car, home, and storage unit. We reject this argument in short order. Because Nevins's property was found scattered throughout the areas over which White exercised control, the jury could disregard his contention that he was unaware of its presence. In addition, the evidence at trial suggested that White used his storage unit as a repository for the spoils of his thefts. Indeed, Investigator Chadderon testified that White traveled from the burglarized storage unit in St. Peter

---

[2]White argues on appeal that the GPS device did not indicate that he traveled in his minivan to Nevins's home. However, the evidence showed that White also owned and drove another automobile, a Buick LeSabre, that was not monitored by GPS.

-13-

directly to his unit at B&G Storage. And law enforcement officials testified that they found a stolen lawnmower, stolen art prints, a stolen rotary hammer, and stolen Ford automobile parts inside White's unit. Finally, police testified that White's car contained bolt cutters, a burglary tool. *See United States v. Martin*, 866 F.2d 972, 981 (8th Cir. 1989) (citing the presence of burglary tools in the defendant's vehicle as evidence supporting conviction); *Gerberding v. United States*, 471 F.2d 55, 61 (8th Cir. 1973) (finding possession of burglary tools relevant to prove robbery). This evidence, coupled with White's possession of numerous items stolen from Nevins's home, could have led a reasonable jury to conclude that White knew or had reasonable cause to believe that the firearms and ammunition were stolen. Accordingly, we reject White's sufficiency challenge.

C.

Finally, we turn to White's arguments regarding the 300-month sentence imposed by the district court. When reviewing the imposition of sentences, we first "ensure that the district court committed no significant procedural error." *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). In the absence of procedural error, we "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* (quoting *Gall*, 552 U.S. at 51). "A district court abuses its discretion and imposes an unreasonable sentence when it fails to consider a relevant and significant factor, gives significant weight to an irrelevant or improper factor, or considers the appropriate factors but commits a clear error of judgment in weighing those factors." *United States v. Kreitinger*, 576 F.3d 500, 503 (8th Cir. 2009) (quoting *United States v. Miner*, 544 F.3d 930, 932 (8th Cir. 2008)).

White argues that the court procedurally erred by imposing a four-level enhancement under USSG § 2K2.1(b)(6)(B). This enhancement applies when a defendant "[u]sed or possessed any firearm or ammunition in connection with another

-14-

felony offense." USSG § 2K2.1(b)(6)(B). According to the Guidelines commentary, the enhancement is appropriate when, "during the course of a burglary, [a defendant] finds and takes a firearm, even if the defendant did not engage in any other conduct with that firearm during the course of the burglary." USSG § 2K2.1 cmt. n.14(B). White argues that the court clearly erred by imposing the enhancement because the Government did not prove by a preponderance of the evidence that he burglarized Nevins's home. *See United States v. Holm*, 745 F.3d 938, 940 (8th Cir. 2014) (noting that the district court must find facts to support an enhancement by a preponderance of the evidence and that we review the district court's fact finding for clear error). To support his argument, White states that he was not charged with burglary and that the Government did not provide evidence showing that police found White's fingerprints or DNA in Nevins's home. White's argument misses the mark. To support the enhancement, the Government did not need to prove that White actually had been charged with burglary or that White's fingerprints or DNA were found at the scene. *See United States v. Martinez*, 258 F.3d 760, 762-63 (8th Cir. 2001); *United States v. Calva*, 979 F.2d 119, 122 (8th Cir. 1992). Instead, the Government only needed to show by a preponderance of the evidence that White committed the burglary in which the firearms and ammunition were taken. *See Calva*, 979 F.2d at 122. Given the extensive evidence presented at trial and the presence of Nevins's belongings in White's car, home, and storage unit, we see no clear error in the district court's finding that a preponderance of the evidence supported the enhancement. We thus reject White's contention of procedural error.

We likewise reject White's contention that his sentence was substantively unreasonable. Here, the district court varied downward from White's advisory sentencing guidelines range of 324 to 405 months and instead imposed a sentence of 300 months. In this circumstance, we have explained that "it is nearly inconceivable that the court abused its discretion in not varying downward still further." *United States v. Lazarski*, 560 F.3d 731, 733 (8th Cir. 2009).

White does not contend that the district court failed to consider a relevant and significant factor or that it considered an irrelevant or improper factor. Instead, he argues that the court committed a clear error of judgment in weighing the relevant factors under 18 U.S.C. § 3553. Specifically, he contends that the court should have placed more weight on his age, his personal circumstances, the allegedly minor nature of his prior crimes, and his lack of counseling or treatment. The district court, however, considered White's arguments at sentencing and determined that they were outweighed by the gravity of White's extensive criminal history. The court noted that White had rejected opportunities for treatment and that White's pattern of behavior caused a concern "about the safety of the public." *See* 18 U.S.C. § 3553 (including public safety as a relevant consideration at sentencing). We afford the court "wide latitude to weigh the § 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate sentence." *United States v. Bridges*, 569 F.3d 374, 379 (8th Cir. 2009). In light of this latitude and White's record of thirty prior felony offenses, we cannot say that the district court committed a clear error of judgment in weighing the § 3553 factors. We therefore conclude that the district court did not abuse its discretion.

III.

For the foregoing reasons, we affirm.

_____

-16-