# United States Court of Appeals

### For the Eighth Circuit

_____

## No. 15-1734

_____

### United States of America

*Plaintiff - Appellee*

v.

### Joshua Green

*Defendant - Appellant*

_____

## No. 15-1737

_____

### United States of America

*Plaintiff - Appellee*

v.

### John Dennis Hayes

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: June 14, 2016
Filed: August 31, 2016
_____

Before SMITH, GRUENDER, Circuit Judges, and KETCHMARK,[1] District Judge.

_____

KETCHMARK, District Judge.

After a joint trial, Appellants Joshua Green and John Dennis Hayes were convicted of conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841 and 846.[2]  Hays and Green were also convicted of possessing, brandishing, and discharging a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).  Additionally, Hayes was convicted of being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

Green and Hayes raise four points in their joint brief.  First, Green and Hayes argue that the evidence was insufficient as a matter of law to support the conviction for methamphetamine conspiracy.  Second, Hayes argues that the evidence was insufficient as a matter of law to support his conviction for being a felon in possession of a firearm.  Third, Green and Hayes contend that the district court erred in denying their motion to suppress and in not excluding all evidence obtained through a search as a sanction for late disclosure by the government.  Fourth, Green and Hayes argue that the district court erred in refusing to give the jury an instruction on the defense of justification in connection with the shooting.  For the reasons set forth below, we affirm.

_____

[1]The Honorable Roseann A. Ketchmark, United States District Judge for the Western District of Missouri, sitting by designation.

[2]The Honorable D. P. Marshall, Jr., United States District Judge for the Eastern District of Arkansas.

# I.

On January 30, 2012, Krystal Journigan, Jason Harcourt, and Jamar Williams drove from Little Rock, Arkansas, to Hayes' residence in Alexander, Arkansas. Harcourt had been purchasing methamphetamine from Hayes through Journigan and another woman. That day, Harcourt intended to purchase a pound of methamphetamine directly from Hayes and "eliminate the females out of the middle of it." Hayes would not agree to meet Harcourt, so Journigan agreed to be the "middleman" one more time. Journigan drove alone to Hayes' residence and parked in the driveway. Harcourt and Williams remained parked in Williams' truck some distance down the road from Hayes' residence. Upon arriving at Hayes' residence, Journigan met Hayes and entered. Journigan tried to get Hayes to talk to Harcourt on the phone, but Hayes refused. Harcourt became angry and walked toward the residence.

While Journigan was in Hayes' residence, she saw Joshua Green and Cammi Lewis arrive, with Green carrying a plastic bag. Journigan walked with Hayes and Green to a back bathroom, where Journigan saw that the bag contained four bundles of methamphetamine, which she presumed were quarter-pound packages.

Journigan and Hayes remained in the bathroom, and Green went to the kitchen/living room area. Hearing a commotion, Journigan and Hayes left the bathroom. Outside of the residence, Harcourt, wearing a black curly wig, and Williams were asking about buying a car that was parked adjacent to the residence. Green told them the car was not for sale and to leave, which they did.

Suspicious of the pair outside, back inside the residence, Hayes and Green each brandished a firearm and told Journigan to sit down and not leave. Journigan complied but later went to the bathroom and called Harcourt to alert him that she was being held at gunpoint. Journigan then left the residence, telling Hayes and Green she was "leaving regardless." Hayes followed Journigan as she remained on the phone and left the residence. Journigan handed the phone to Hayes to speak

with Harcourt. Hayes and Harcourt argued over the phone while Hayes stood with Journigan at her vehicle.

While Hayes and Green held Journigan at gunpoint, Harcourt had returned to Williams' truck and dropped off the black curly wig. Harcourt and Williams then walked back towards Hayes' residence. A woman waiting to pick up her child at a bus stop saw Harcourt and Williams walking up the street. She saw Harcourt talking on a cellular phone and heard Harcourt say that he was coming to get his money or his drugs and that he had a gun. Harcourt continued to argue with Hayes over the phone as he turned the corner onto Hayes' street. Harcourt saw Hayes standing with Journigan and noted that Hayes had a firearm in his hand that was resting by his side. Harcourt had a Glock .45 firearm behind his right hip.

Harcourt and Hayes scuffled by Journigan's vehicle. At some point, Hayes' gun fired, shooting off a portion of his finger. Also at that time, Green appeared on the porch of Hayes' residence and began firing a Ruger 9mm. Williams also appeared at the scene and began to fire at Hayes' residence. Hayes and Harcourt fell to the ground near the cars parked in the street. Williams ran from the scene with his gun. Harcourt was shot in the wrist and forearm.

When shots were fired, Journigan ducked down in her car, turned over the ignition, and started to back out. Green shot her rear, driver's side tire. Green had walked down to where Hayes was, and Journigan saw one or both of them standing over Harcourt, shooting him. Journigan drove off. Harcourt had multiple gunshot wounds and retreated behind a fence several yards away.

Green helped Hayes into Green's vehicle. Green gathered the firearms at the scene and placed them in his vehicle. Green and Lewis drove Hayes to the hospital and dropped him off. Green returned to Lewis' residence, driving near Hayes' residence, where Saline County Sheriff's Office and the Alexander Police had responded.

Upon execution of a search warrant inside Hayes' residence, a detective found an empty Ruger firearm box, an empty Federal Cartridge ammunition box, and a 9mm Federal Cartridge round on the kitchen counter.

Another officer responded to the hospital where Hayes was having his finger treated. Hayes' personal belongings were seized as evidence of the shooting. In a pocket of his pants was a Wal-Mart receipt for the purchase of 9mm Federal Cartridge ammunition dated January 30, 2012, at 1:09 p.m. Hayes told police that "Josh" was involved in the shooting but that he did not know his last name.

On February 2, 2012, law enforcement arrested Green for his role in the shooting at Hayes' residence on January 30, 2012. Green gave a recorded statement. Despite initial denials, Green admitted that he fired the Ruger 9mm and that he took guns from the scene. Green told officers that the firearms were at his residence and agreed to turn them over to police. During a consent search of Green's home, officers recovered from an air vent a black computer bag containing four firearms, one of which was the Ruger 9mm used in the shootout on January 30, 2012. The air vent also contained a blue backpack and a black computer bag that had wheels. Within these bags were items identifying Green as the owner of the bags, as well as scales, pipes, baggies, and approximately seven grams of methamphetamine. The bags also contained cellular phones and a laptop computer. The Saline County Sheriff's office seized these items and placed them into secure storage.

Also on February 2, 2012, law enforcement located Green's blue Trailblazer in the carport at Lewis' residence. During a search of the vehicle, police located a Federal Cartridge ammunition box and fifty rounds of Federal Cartridge ammunition. During a search of Lewis' residence, officers found Green's clothing with .45 caliber bullets and a .380 bullet lying on top.

On September 11, 2013, Green and Hayes were charged with conspiracy and firearms violations. In May of 2014, prosecutors learned that the cellular phones

and the computer found in Green's air vent had not been searched. On May 14, 2014, the government obtained a search warrant based on probable cause obtained at the time of their seizure in 2012 and produced the evidence approximately a week before trial. The trial began May 27, 2014.

A search of the electronic devices resulted in photographic evidence from two of the phones and the computer, as well as text messages from one of the phones. The district court denied a motion to suppress evidence from that search on Fourth Amendment grounds. However, the district court excluded from trial inculpatory evidence obtained from the electronic devices based on late disclosure as a discovery sanction under Federal Rule of Criminal Procedure 16. Evidence excluded from trial included photographs of drug paraphernalia from a phone, the "contacts list" from a phone, a photograph from the computer showing 31.8 grams of methamphetamine on a scale, and several photographs of marijuana from the computer. Evidence admitted from the search included the two phones, three photographs of Green from one of the phones to show ownership of the phones, and a series of redacted text messages from one of the phones that was admitted under Federal Rule of Evidence 404(b).

II.

In their first point, Green and Hayes challenge the sufficiency of the evidence supporting their conviction for conspiracy to possess with intent to distribute methamphetamine. Specifically, Green and Hayes contend that the jury's failure to make a finding on their special verdict form that the conspiracy included fifty or more grams of methamphetamine means that the jury must have convicted Green and Hayes based solely on the seven grams of methamphetamine found at Green's home, but that there was no evidence at trial connecting that methamphetamine to charged conspiracy. Additionally, they argue that there was a complete withdrawal by everybody allegedly involved in that conspiracy through the shootout three days before the seven grams were found at Green's house. According to Green and Hayes, because that methamphetamine was found after the

shootout, the evidence was insufficient as a matter of law to establish their involvement in a conspiracy before the shootout.[3]  We disagree, and affirm their conspiracy convictions.

"When reviewing the sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict rendered and accept all reasonable inferences which tend to support the jury verdict."  *United States v. White*, 816 F.3d 976, 985 (8th Cir. 2016) (citation omitted).  "Although the evidence need not preclude every outcome other than guilty, we consider whether it would be sufficient to convince a reasonable jury beyond a reasonable doubt."  *Id.*  We will reverse for insufficient evidence only if no reasonable jury could have found the appellants guilty beyond a reasonable doubt.  *Id.*

To establish that a defendant conspired to distribute drugs under 21 U.S.C. § 846, the government must prove:  "(1) that there was a conspiracy, i.e., an agreement to distribute the drugs; (2) that the defendant knew of the conspiracy; and (3) that the defendant intentionally joined the conspiracy."  *United States v. Sanchez*, 789 F.3d 827, 834 (8th Cir. 2015) (citation omitted).  "An agreement to join a conspiracy need not be explicit but may be inferred from the facts and circumstances of the case."  *Id.*  "A defendant may be convicted for even a minor role in a conspiracy, so long as the government proves beyond a reasonable doubt that he or she was a member of the conspiracy."  *United States v. Lopez*, 443 F.3d 1026, 1030 (8th Cir. 2006) (citation omitted).

As an initial matter, Green and Hayes are mistaken in their assertion that any specific finding regarding which methamphetamine was part of the conspiracy must be read from the jury's special verdict form.  As noted above, Green and

_____

[3]Green and Hayes also argue in this point that the § 924 firearms counts depend upon the conspiracy count and therefore that if the conspiracy count fails, then the dependent § 924 firearms counts fail as well.  Because sufficient evidence supports the conspiracy count, this argument is without merit.

Hayes were charged with conspiring to possess with intent to distribute at least fifty grams but less than 500 grams of methamphetamine. In its special verdict form, the jury determined that the amount was less than fifty grams. Green and Hayes speculate that because the amount listed on the special verdict form is less than fifty grams, the amount must have been the amount found at Green's residence after the two had withdrawn from the conspiracy. No such inference is required, let alone suggested, by the jury's verdict. Rather, the evidence at trial – including (1) evidence regarding a conspiracy to distribute methamphetamine prior to January 30, 2012; (2) evidence of the failed transaction that day, such as testimony that Green brought methamphetamine into Hayes' home to sell; and (3) evidence found at Green's home that is highly corroborative of methamphetamine trafficking – was more than sufficient for a rational jury to conclude that Hayes and Green conspired together, and with others, to distribute methamphetamine.

To that end, Green and Hayes cite no authority indicating that a special verdict in a case like this can render the evidence of the conspiracy insufficient to support the convictions. The special verdict here applies only in determining the statutory minimum and maximum for the offense of conviction. *See United States v. Rolon-Ramos*, 502 F.3d 750, 754-55 (8th Cir. 2007) ("drug quantity is not an essential element of a conspiracy offense"). Here, that the jury found beyond a reasonable doubt an amount less than what the government charged does not impact the sufficiency of the evidence supporting the conviction. *See id.*

As to the appellants' related argument that they had withdrawn from the conspiracy through the shootout, we have held that "[i]t is not easy to withdraw from a criminal conspiracy." *United States v. Zimmer*, 299 F.3d 710, 718 (8th Cir. 2002) (citation omitted). To withdraw from a conspiracy, a defendant must do more than demonstrate that he or she undertook no conspiratorial activity after the cut-off date. *Id.* (citations omitted). Rather, a defendant must demonstrate that he or she took affirmative action to withdraw from the conspiracy by making a clean breast to the authorities or by communicating withdrawal in a manner reasonably

calculated to reach coconspirators. *Id.* To make a clean breast of a conspiracy, the conspirator must sever all ties to the conspiracy and its fruits, and act affirmatively to defeat the conspiracy by confessing to and cooperating with the authorities. *Id.* "Simply ceasing to be an active participant in the conduct of the conspiracy alone is not enough to establish a withdrawal from the conspiracy." *United States v. Shepard*, 462 F.3d 847, 869 (8th Cir. 2006) (citation omitted).

Again, Green and Hayes do not appear to contest that any of the three elements were proven beyond a reasonable doubt. Rather, they contend that the shootout communicated withdrawal and an end to the conspiracy. But withdrawal does not negate an element of the conspiracy crime in this case. *See Smith v. United States*, 133 S.Ct. 714, 719 (2013).[4] "Far from contradicting an element of the offense, withdrawal presupposes that the defendant committed the offense." *Id.* Because conspiracy is a continuing offense, "a defendant who has joined a conspiracy continues to violate the law through every moment of the conspiracy's existence, and he becomes responsible for the acts of his co-conspirators in pursuit of their common plot." *Id.* (citations and quotation marks omitted). "Withdrawal terminates the defendant's liability for postwithdrawal acts of his co-conspirators, but he remains guilty of conspiracy." *Id.* The burden of establishing withdrawal rests upon the defendant. *Id.* at 720-21.

Here, neither Green nor Hayes appears to have submitted a jury instruction as to withdrawal, even though it was their burden to establish the defense. *Id*. Even without such a jury instruction, the jury was free to disbelieve that there was withdrawal as of the shooting. Specifically, the jury was free to disbelieve there was withdrawal from the conspiracy between Hayes and Green as they continued

---

[4]This issue often arises on review of a district court's decision not to submit a jury instruction for withdrawal. *See, e.g., United States v. Shepard*, 462 F.3d 847, 868-869 (8th Cir. 2006). Green and Hayes do not raise this argument and do not point to any portion of the record indicating the submission of a withdrawal instruction.

- 9 -

to further their crime through concealment, namely, Green providing Hayes at least one firearm used in furtherance of their conspiracy or Green removing the firearms from Hayes' residence, which the jury could infer meant was for the purpose of hiding or disposing those firearms. The jury was additionally free to disbelieve Green's testimony that the amount of methamphetamine found in his residence was for personal use. Rather, the jury was free to find that the methamphetamine was tied to the conspiracy, particularly as it was co-mingled with other evidence of narcotic trafficking, including multiple guns, multiple cellular phones, baggies, and scales. Finally, even assuming that all co-conspirators had withdrawn as of January 30, 2012 (an assumption we reject), the fact that this evidence was not recovered until two days later is simply inconsequential, as the jury could readily infer that it related back to the just-ended conspiracy.

III.

In the second point on appeal, Hayes challenges the sufficiency of the evidence supporting his conviction for felon in possession of a firearm, here, a Ruger 9mm. As noted above, in our review for sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, and we will reverse for insufficient evidence only if no reasonable jury could have found the appellants guilty beyond a reasonable doubt. *White*, 816 F.3d at 985.

To convict Hayes of being a felon in possession of a firearm under 18 U.S.C. § 922(g), the government had to prove: "(1) that [Hayes] had a previous conviction for a crime punishable by imprisonment exceeding one year, (2) that he knowingly possessed the firearms and ammunition, and (3) that the firearms and ammunition traveled in or affected interstate commerce." *Id.* Hayes does not challenge the first and third elements; rather, he argues only that the evidence is not sufficient to show that he knowingly possessed the Ruger 9mm.

"A defendant knowingly possesses a firearm if he has actual or constructive possession of it, and the possession can be sole or joint."

- 10 -

469 F.3d 716, 719 (8th Cir. 2006) (citation omitted). "Constructive possession of the firearm is established if the person has dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself." *Id*.

Here, the record contains ample evidence from which a jury could conclude beyond a reasonable doubt that Hayes constructively possessed the Ruger 9mm firearm used during the shootout. When Hayes was arrested at the hospital, police confiscated the contents of his pockets, which included a Wal-Mart receipt for 9mm ammunition. Green testified that the Ruger 9mm was his and that he brought it inside Hayes' residence that day for protection. An officer located the empty Ruger 9mm firearm box and Federal Cartridge 9mm bullet box in plain view on the island between the kitchen and dining area of Hayes' residence the day after the shooting. Journigan testified that Hayes and Green "pulled their guns" and together held her at gunpoint. Under these facts, a reasonable jury could find that Hayes had dominion and control over the contents of his home, including the Ruger 9mm. *See Wells*, 469 F.3d at 720.

IV.

In the third point on appeal, Green and Hayes contend that the district court erred in denying their motion to suppress evidence obtained from the delayed search of phones and a computer. Green asserts a Fourth Amendment violation because of the government's continued possession of cellular phones and a computer, and Green and Hayes assert a violation of discovery rules.[5]

As to Green's argument that the district court erred in denying his motion to suppress evidence based on Fourth Amendment law, "we review the district court's findings of fact for clear error and the ultimate question of whether the

---

[5]Hayes concedes that he has no standing under the Fourth Amendment to challenge the search.

Fourth Amendment was violated de novo." *United States v. Allen*, 705 F.3d 367, 369 (8th Cir. 2013) (citation omitted).

Green asserts that the government's continued possession of various cellular phones and a computer that were included within evidence taken from his residence pursuant to a consent search on February 2, 2012, violated the Fourth Amendment. Specifically, Green contends that the government's retention of the cellular phones and the computer for more than two years was without justification, warranting application of the exclusionary rule. The government responds that the cellular phones and computer were in its possession through Green's consent such that no possessory interest was infringed and that Green never sought return of the property.

Even assuming that the appellants are correct that the delay in securing a search warrant was a Fourth Amendment violation, admission of evidence from the cellular phones was harmless beyond a reasonable doubt. *See Chambers v. Maroney*, 399 U.S. 42, 53 (1970) (evidence admitted in violation of the Fourth Amendment is subject to review for harmless error). "An error is harmless if we conclude that no substantial rights were affected and that the error did not influence or had only a very slight influence on the verdict." *United States v. Tenerelli*, 614 F.3d 764, 769 (8th Cir. 2010) (citation omitted); *see also* Fed. R. Crim. P. 52(a). Here, the government introduced evidence independent of that introduced pursuant to the May 14, 2014 search that supports the jury's verdict. *See United States v. Briley*, 319 F.3d 360, 365 (8th Cir. 2003). As detailed above, completely independent of the photographs and the text messages, there was (1) sufficient evidence to convict Green and Hayes of conspiracy to possess with intent to distribute methamphetamine, and (2) sufficient evidence to convict Hayes of being a convicted felon in possession of a firearm. We conclude that any error in admitting evidence uncovered in the search pursuant to the May 14, 2014 warrant was harmless beyond a reasonable doubt as to those convictions.

As to the third conviction, possessing, brandishing, and discharging a firearm in furtherance of a drug trafficking crime, we also find that the government introduced sufficient evidence independent of that introduced pursuant to the May 14, 2014 search such that any error in the admission of that evidence was harmless beyond a reasonable doubt. To establish that the defendants violated § 924(c) as charged in this case, the government must prove that (1) the defendants committed a drug trafficking crime; and (2) the defendants possessed, brandished or discharged a firearm in furtherance of that crime. *United States v. Robinson*, 617 F.3d 984, 988 (8th Cir. 2010). With regard to the first element, and as shown above, there was sufficient evidence – without evidence from the contested search – to support the jury's finding that both appellants engaged in a conspiracy to distribute methamphetamine, which is a drug trafficking crime under § 924(c). *See Rolon-Ramos*, 502 F.3d at 757.

With regard to the "in furtherance of" element of § 924(c), "the government must present evidence from which a reasonable [trier of fact] could find a 'nexus' between the defendant's possession of the charged firearm and the drug crime, such that this possession had the effect of 'furthering, advancing or helping forward' the drug crime." *Robinson*, 617 F.3d at 988 (alterations in original; citations omitted). As detailed above, there was sufficient evidence that both appellants possessed the Ruger 9mm. *See United States v. Conway*, 754 F.3d 580, 590 (8th Cir. 2014) (noting that possession may be actual or constructive; it need not be exclusive). There was also sufficient evidence to support the jury's finding that Hayes brandished a firearm, in particular, the testimony that he brandished a firearm to Journigan inside the house. Likewise, Green's own admissions, along with the other evidence detailed above, was more than sufficient to support the jury's finding that he both brandished and discharged the Ruger 9mm. Moreover, all of these acts occurred during a methamphetamine transaction gone bad, which certainly provides a sufficient basis for the jury's finding of the requisite nexus between this possessing, brandishing, and discharging and the drug trafficking conspiracy. As the evidence at trial was sufficient to support both Green's and Hayes' § 924(c) convictions even ignoring the evidence from the contested search,

- 13 -

we conclude that any error in admitting evidence uncovered in the search pursuant to the May 14, 2014 warrant was harmless beyond a reasonable doubt.

In this point, Green and Hayes also argue that the district court abused its discretion under Rule 16 in its consideration of the evidence found pursuant to the May 14, 2014 search warrant.

> We review for abuse of discretion a district court's decision regarding the exclusion of evidence as a sanction for governmental discovery violations. If an actual discovery violation exists, the sanction will be upheld or reversed based on (1) whether the Government acted in bad faith and the reason(s) for delay in production; (2) whether there is any prejudice to the defendant; and (3) whether any lesser sanction is appropriate to secure future Government compliance.

*United States v. Polk*, 715 F.3d 238, 249 (8th Cir. 2013) (internal citations and quotation marks omitted).

During a pre-trial hearing, the government conceded that the delayed search of the computer and phones was its error and that when prosecutors discovered that the searches had not been done, the government obtained search warrants and disclosed the contents of the search as soon as possible. Because of late disclosures, the district court excluded multiple pieces of evidence. The record indicates that the district court's review of the timeline and its treatment of the evidence was measured and considered. Notably, the district court found no bad faith and allowed in only limited evidence from that late search. Additionally, the record reflects that following the disclosure, the defense had a week to prepare for this evidence. *See Polk*, 715 F.3d at 250 (affirming where defense had seven days prior to trial to prepare for trial following disclosure); *United States v. Altman*, 507 F.3d 678, 680 (8th Cir. 2013) (district court abused its discretion by excluding as untimely disclosed testimony where defense had four days to prepare). Accordingly, we hold that the district court did not abuse its discretion in

fashioning its sanctions and allowing in some evidence of what was recovered in the May 14, 2014 search.

V.

In the fourth point on appeal, Green and Hayes contend that the district court erred in prohibiting them from presenting a justification defense. "We review de novo a district court's decision whether there is sufficient evidence to submit an affirmative defense to a jury." *United States v. El-Alamin*, 574 F.3d 915, 925 (8th Cir. 2000 (citation omitted). We reject this argument as well.

Although it appears we have not been faced with a challenge regarding the justification defense as it applies to § 924(c), we have previously declined to recognize "a defense of legal justification in violation of § 922(g)." *United States v. Cooney*, 571 F. App'x. 505, 506 (8th Cir. 2014) (citations omitted); *see also United States v. Poe*, 442 F.3d 1101, 1103 (8th Cir. 2006). In those § 922(g) cases, we have indicated that if such defense were available, we would require proof of the following four elements:

> (1) that defendant was under an unlawful and "present, imminent, and impending [threat] of such a nature as to induce a well-grounded apprehension of death or serious bodily injury," (2) that defendant had not "recklessly or negligently placed himself in a situation in which it was probable that he would be [forced to choose the criminal conduct]," (3) that defendant had no "reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm,'" and (4) "that a direct causal relationship may be reasonably anticipated between the [criminal] action and the avoidance of the [threatened] harm."

*Poe*, 442 F.3d at 1104 (citation omitted; alterations in original). "To be entitled to a jury instruction on a justification defense, a defendant must show an underlying

evidentiary foundation as to each element of the defense, such that a reasonable person could conclude that the evidence supported the defendant's position." *Id.* at 1104 (citations and internal quotation marks omitted).

Relying on *Cooney*, Green contends that he should have been allowed to raise a justification defense to his charge brought pursuant to § 922(g), and Green and Hayes make the same argument as to their conviction under § 924(c). Even if we were to recognize the defense as applied to either provision, Green and Hayes did not establish, at a minimum, that they did not recklessly or negligently place themselves in a situation where it would be probable that either man would be forced to choose the criminal conduct. As detailed above, there is sufficient evidence indicating that Green and Hayes were part of a dangerous drug conspiracy, and jointly possessed at least one firearm for protection during that conspiracy. Further, neither appellant provided any showing that he had no reasonable, legal alternative to violating the law. Where a defendant could have called the police, as either easily could have done after Harcourt and Williams first left Hayes' residence, that defendant does not meet this element. *See El-Amine*, 574 F.3d at 926. Here, Green and Hayes pulled a gun on Journigan when they grew suspicious of Harcourt and Williams outside of the home. Rather than stay inside when the two individuals returned, they exited the residence and engaged in gunfire. This is not choosing unlawful conduct where no lawful conduct is available. This is consciously committing a crime, and the district court did not err in refusing a jury instruction or argument on justification under these facts.

VI.

Accordingly, we affirm the judgment of the district court.

_____