# United States Court of Appeals
### For the Eighth Circuit

_____

No. 17-3148

_____

United States of America

*Plaintiff - Appellee*

v.

DNRB, Inc., doing business as Fastrack Erectors

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: April 12, 2018
Filed: July 17, 2018

_____

Before GRUENDER, MELLOY, and GRASZ, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Eric Roach fell thirty-six feet to his death while working at a warehouse construction site in Kansas City, Missouri. Roach was not using fall-protection equipment when he fell. Following a bench trial before the district court,[1] DNRB was

---

[1]The Honorable Greg Kays, Chief Judge, United States District Court for the Western District of Missouri.

convicted of a Class B misdemeanor for willfully violating two safety regulations and causing Roach's death. *See* 29 U.S.C. § 666(e); 29 C.F.R. § 1926.760(a)(l) & (b)(l). On appeal, DNRB challenges the sufficiency of the evidence, several evidentiary rulings, and the sentence imposing the statutory maximum fine of $500,000. We consider each of these issues in turn, and we affirm.

## I.

DNRB first argues that the Government did not present sufficient evidence to sustain the guilty verdict. "We review the sufficiency of the evidence after a bench trial in the light most favorable to the verdict, upholding the verdict if a reasonable factfinder could find the offense proved beyond a reasonable doubt." *United States v. Iqbal*, 869 F.3d 627, 629-30 (8th Cir. 2017). DNRB argues that the Government failed to prove three elements of § 666(e): (1) that the company violated an applicable standard, (2) that it did so willfully, and (3) that the violation caused an employee's death.

First, DNRB argues that it did not violate an applicable standard. Section 666(e) imposes criminal liability on "[a]ny employer who willfully violates . . . [an applicable standard when] that violation caused death to any employee." Applicable regulations require employers to protect employees from fall hazards. In particular, § 1926.760(a)(l) and (b)(l) state that employees who erect steel "shall be protected from fall hazards" by personal fall-arrest systems or certain other means. A personal fall-arrest system consists of a harness and connectors used to secure a worker to an anchorage point. 29 C.F.R. § 1926.751. DNRB maintains that it did not violate § 1926.760 because Roach had a personal fall-arrest harness and connectors, even though he was not using them to secure himself to an anchorage point on the warehouse's frame. But the regulations state that employees "shall be protected" by appropriate equipment, not that they merely be provided with or possess such equipment. *See* 29 C.F.R. § 1926.760(a)(l) & (b)(1); *see also Dakota Underground,*

*Inc. v. Sec'y of Labor*, 200 F.3d 564, 568-69 (8th Cir. 2000) (upholding employer liability for a violation of a regulation with similar "shall be protected" language where the employees had available protection they did not use). Because Roach was not connected to an anchorage point, there was sufficient evidence that DNRB violated § 1926.760(a)(l) and (b)(1).[2]

Second, DNRB argues that the Government failed to prove that it willfully violated the standards. The parties agree that this element requires that DNRB "intentionally disregarded or was plainly indifferent to the requirements of the Act." *See Valdak Corp. v. OSHA*, 73 F.3d 1466, 1468 (8th Cir. 1996). Noting that DNRB had a previous citation for violating § 1926.760, the district court concluded that DNRB was aware of its requirements. Moreover, a supervisor's knowledge can be imputed to his employer, and there was evidence supporting a conclusion that Roach's supervisor Bob Wiechens intentionally disregarded the safety requirements here. *See Comprehensive Care Corp. v. RehabCare Corp.*, 98 F.3d 1063, 1066 (8th Cir. 1996). Wiechens testified that it was his job to know and enforce the applicable safety regulations. The district court found that Wiechens saw Roach walking along the trusses of the warehouse without being connected to an anchorage point. Several witnesses testified that they saw Roach doing so, and a crane operator stated that he expressly warned Wiechens about Roach's failure to use fall-protection equipment. One coworker testified that he and Roach worked without fall protection and that Wiechens observed their work. As a result, the court did not credit Wiechens's testimony that he was unaware that Roach was not using fall-protection equipment.

---

[2]Relatedly, DNRB argues that the district court found it liable for violating a generalized supervision standard not alleged in the information, instead of convicting it for violating the specific fall-protection regulations with which it was charged. However, the district court found that DNRB violated the specific fall-protection standards alleged in the information, and it analyzed each element of § 666(e) in relation to them.

"The district court was in the best position to observe the witnesses' demeanor and assess their credibility, and we will not disturb the district court's reasoned credibility determinations." *United States v. Bowie*, 618 F.3d 802, 814 (8th Cir. 2010). Because Wiechens's knowledge can be imputed to DNRB, sufficient evidence supported the court's finding of a willful violation by the company.

Third, DNRB argues that the Government failed to prove causation. "When a crime requires not merely conduct but also a specified result of conduct, a defendant generally may not be convicted unless his conduct is both (1) the actual cause, and (2) the legal cause (often called the proximate cause) of the result." *Burrage v. United States*, 134 S. Ct. 881, 887 (2014) (internal quotation marks omitted). Actual causation typically requires showing that Roach's death would not have occurred "but-for" DNRB's conduct. *See id.* at 887-88. Legal causation requires showing that there was "some direct relation between the injury asserted and the injurious conduct alleged." *Paroline v. United States*, 134 S. Ct. 1710, 1719 (2014). Legal causation is often analyzed in terms of foreseeability. *Id.* Here, the district court found that Roach would not have fallen to his death had he been connected to an anchorage point and that DNRB's failure to make him use required fall-protection equipment was thus a but-for cause of his death. The court also determined that his fall was "a foreseeable and natural result" of working more than thirty feet above the ground without using fall-protection equipment. This finding satisfies legal causation. *See id.* at 1722 (explaining that a "direct and foreseeable result" establishes legal causation). Together, these findings were sufficient to support a conclusion that DNRB's failure to comply with the safety standards caused Roach's death.

Because a reasonable factfinder could conclude that the Government proved each of the challenged elements of the crime beyond a reasonable doubt, DNRB's challenge to the sufficiency of the evidence fails.

## II.

Next, DNRB argues that the district court erred in admitting a variety of what it describes as irrelevant, prejudicial "other-acts" evidence in violation of Federal Rule of Evidence 404(b). In particular, DNRB claims the district court improperly admitted evidence of other violations it committed at the Kansas City construction site, as well as violations from 2007 and 2015 that occurred at other sites. While other-acts evidence is not admissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," it is admissible for another purpose such as proving intent or knowledge. Fed. R. Evid. 404(b). We review evidence admitted under Rule 404(b) for an abuse of discretion, reversing "only when the evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." *United States v. Walker*, 470 F.3d 1271, 1274 (8th Cir. 2006) (internal quotation marks omitted). To admit evidence under Rule 404(b), it must be "(1) relevant to a material issue; (2) similar in kind and not overly remote in time to the crime charged; (3) supported by sufficient evidence; and (4) higher in probative value than prejudicial effect." *Id*.

First, the other-acts evidence at issue here was relevant to the material issue of DNRB's knowledge and intent. As mentioned, exhibits and testimony established that Wiechens—and thus DNRB—was aware of the applicable standards and knew that Roach was not using his safety equipment. The other-acts evidence further suggested that DNRB's failure to ensure that Roach used his equipment properly was knowing rather than accidental. Second, the other-acts evidence was also similar in kind to the charged conduct. The 2007 incident involved a violation of the same regulation at issue here, and the 2015 incident likewise involved DNRB's failure to use fall-protection equipment. The remaining other-acts evidence occurred at the worksite where Roach fell. These other acts were "sufficiently similar to support an

inference of criminal intent." *Id.* at 1275. Nor, considering the facts and circumstances, were any of these other incidents "too remote in time." *See id.* (upholding the admission of 404(b) evidence occurring eighteen years before the charged offense in light of its continuing probativeness). Third, DNRB's responsibility for each of these violations was supported by witness testimony and other evidence. Fourth, the admission of this evidence was not unduly prejudicial. It corroborated other evidence concerning DNRB's intent, and we presume that a judge conducting a bench trial will use evidence properly, mitigating any prejudice. *See David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012); *cf. Williams v. Illinois*, 567 U.S. 50, 69 (2012) (presuming that a judge who sits as trier of fact will not use information improperly). We thus reject DNRB's contention that the district court abused its discretion by admitting the other-acts evidence.[3]

DNRB also argues that the Government failed to "provide reasonable notice of the general nature" of this evidence before trial. *See* Fed. R. Evid. 404(b). But we have explained that "Rule 404(b)'s notice standard is flexible because what constitutes a reasonable disclosure will depend largely on the circumstances of each case." *United States v. White*, 816 F.3d 976, 984 (8th Cir. 2016) (internal quotation marks and alterations omitted). "Whether notice was reasonable is informed in part by a defendant's proof that he suffered prejudice as a result." *Id.* Here, the court confirmed that DNRB received the 404(b) evidence "in the regular course of discovery" and that there was no surprise. Consequently, we find "no notice problem sufficient to warrant reversal." *See id.*

---

[3]DNRB suggests that we review the 404(b) evidence admitted here *de novo* because it implicates DNRB's constitutional rights. *See United States v. Davis*, 859 F.3d 592, 596-97 (8th Cir. 2017). We need not decide this issue. Even if we review the district court's evidentiary rulings *de novo*, we find the evidence admissible for the reasons explained above.

**III.**

Finally, DNRB raises several objections to its sentence. DNRB had ceased operations, and the presentence report ("PSR") indicated that DNRB would be unable to pay a fine. The Government did not object to this conclusion. Nonetheless, the district court fined DNRB the statutory maximum of $500,000. *See* 18 U.S.C. § 3571(c)(4). Because DNRB was convicted of a Class B misdemeanor, the sentencing guidelines do not apply. *See* United States Sentencing Guidelines ("U.S.S.G.") § 1B1.9. Therefore, we must uphold the sentence if it is within the statutory range and not "plainly unreasonable." *See* 18 U.S.C. § 3742(a)(4); *United States v. Chavez*, 204 F.3d 1305, 1310 (11th Cir. 2000) (explaining that sentences for Class B misdemeanors are reversed only if "they were imposed in violation of law" or are "plainly unreasonable").["4]

DNRB makes two main arguments. First, it contends that the district court did not consider all of the 18 U.S.C. § 3553(a) factors and focused only on the factors related to promoting respect for the law and deterrence. However, while the district court did emphasize those two factors, it stated that it had considered all of the factors, and a sentencing court need not "'categorically rehearse' each of the § 3553(a) factors on the record as long as it is clear that the court considered those factors." *United States v. Hernandez*, 518 F.3d 613, 616 (8th Cir. 2008). Having reviewed the record, we are satisfied that the district court did consider all of the § 3553(a) factors here.

---

[4]The Third Circuit has concluded that "the exclusion of Class B . . . misdemeanors from the Guidelines provisions was intended to place those offenses entirely outside the statutory scheme" and that review therefore is conducted under pre-guidelines standards. *In re Solomon*, 465 F.3d 114, 120-21 (3d Cir. 2006). Because the outcome would be the same regardless, we need not decide between these approaches here.

Second, DNRB challenges the imposition of the fine given the PSR's conclusion that it likely would be unable to pay. Though the guidelines do not apply to Class B misdemeanors, DNRB contends that the district court needed to make factual findings before rejecting the PSR's conclusion that it lacked an ability to pay a fine. Among other arguments, it cites Federal Rule of Criminal Procedure 32(i)(3), which requires the court to rule on any disputed portion of the PSR or determine that a ruling is unnecessary. It also points to a Fifth Circuit case involving the guidelines, which states that a court should explain how a decision imposing a fine "comports with" a PSR indicating an inability to pay. *See United States v. Pacheco-Alvarado*, 782 F.3d 213, 220 (5th Cir. 2015).

Even if DNRB is correct that these requirements are applicable here, the record shows that the district court did explain how its sentence comported with the PSR's inability-to-pay conclusion. The district court did not reject the PSR's conclusion about DNRB's ability to pay. Instead, the court acknowledged that the company had "closed up shop" but imposed the fine anyway, "hoping they have some more corporate formalities left to pay" in light of the large sums DNRB allegedly had paid its attorneys. In other words, it chose to impose the maximum fine authorized by law despite recognizing the likelihood that DNRB might not be able to pay it. This was not plainly unreasonable. *See United States v. Morais*, 670 F.3d 889, 894 (8th Cir. 2012) (upholding a fine in a guidelines case despite the court's "cryptic" discussion of the defendant's ability to pay).

## IV.

For the above reasons, we affirm DNRB's conviction and sentence.[5]

———————————————————

---

[5]DNRB presents several other arguments.  For instance, it maintains that the court violated Federal Rule of Criminal Procedure 17(c) by issuing third-party subpoenas related to DNRB's ability to pay, and it suggests for the first time in its reply brief that the district court failed to consider the 18 U.S.C. § 3572 factors related to paying fines.  We decline to consider such cursory arguments.  *United States v. Stuckey*, 255 F.3d 528, 531 (8th Cir. 2001); *see also United States v. Martinson*, 419 F.3d 749, 753 (8th Cir. 2005) (explaining that we generally do not consider issues raised for the first time on appeal in a reply brief).